**Edgar GUILBEAU, Appellant,**

v.

**Eliane ANDERSON, Appellee.**

**No. A14–92–00202–CV.**

Court of Appeals of Texas,
Houston (14th Dist.).

Nov. 5, 1992.

Billy King, Jr., Michael Kovich, Houston, for appellant.

Barbara Parsons, D. Ferguson McNiel, Thamas L. Hunt, Houston, for appellee.

Before J. CURTISS BROWN, C.J., and SEARS and ELLIS, JJ.

## OPINION

SEARS, Justice.

This is an appeal from a final judgment in favor of the plaintiff, awarding damages for negligence, gross negligence, mental anguish and violations of the Deceptive Trade Practices Act. We affirm.

In the spring of 1988, Eliane Anderson signed an earnest money contract on a home located at 12414 Brandywyne. The contract called for an inspection of the house, and Ms. Anderson arranged for the inspection to be performed by ED–MAR Engineering and Inspection Services, Inc. The inspection was performed by Edgar Guilbeau on approximately May 2, 1988. His report indicated that the foundation had good structural integrity. On May 31, 1988, Ms. Anderson purchased the home. In November of that same year, Ms. Anderson discovered cracks in her bedroom, living room and dining room. In the spring of 1990, she contacted Alvin Alleyne, a registered engineer, to inspect her home. This second inspection showed that there was significant settling of the foundation. Mr. Alleyne determined that the foundation was cracked, and had been cracked prior to Ms. Anderson's purchase. By coincidence, Mr. Alleyne had inspected the house in March of 1988 for a different prospective buyer. It was his opinion in March of 1988 that the foundation was cracked; this was two months *before* the property was inspected by Guilbeau. Ms.

Anderson brought suit against ED–MAR Engineering Inspection Services, Inc. and against Edgar Guilbeau, personally, for negligent inspection, gross negligence, mental anguish and violations of the DTPA. The trial court awarded damages on all issues. Appellant brings eight points of error.

In points one through three, Guilbeau complains that the trial court erred in holding him jointly and severally liable on both the negligence and DTPA claims. He challenges the verdict on both legal and factual sufficiency grounds. He claims that: (1) the verdict is incorrect *as a matter of law;* (2) there is *no evidence* or alternatively *insufficient evidence* to support the verdict; and (3) the verdict is *against the great weight and preponderance of the evidence.* Appellant did not have the burden of proof on either the negligence or DTPA claim. When a party appeals an issue on which he did not have the burden of proof, the proper legal and factual standards, respectively, are no evidence and insufficient evidence. When reviewing a no evidence point, this court considers only the evidence and inferences tending to support the findings, and disregards all evidence and inferences to the contrary. *State v. $11,014.00,* 820 S.W.2d 783, 784 (Tex.1991); *Vickery v. Texas Carpet Co.,* 792 S.W.2d 759, 762 (Tex.App.— Houston [14th Dist.] 1990, writ denied). When reviewing a factual sufficiency point, the court considers and weighs all the evidence, and will set aside the verdict only if it is so contrary to the overwhelming weight of the evidence that it is clearly wrong and unjust. *Cain v. Bain,* 709 S.W.2d 175, 176 (Tex.1986).

Guilbeau claims that he cannot be liable for the judgment because he was acting within the course and scope of his employment when he inspected Ms. Anderson's home. He asserts that the appellee had to plead and pierce the corporate veil in order to hold him personally liable. Appellant's argument misconceives the nature of this suit. Guilbeau is being sued individually for his own negligence and his own misrepresentations. It is the general rule in Texas that corporate agents are individually liable for fraudulent or tortious acts committed while in the service of their corporation. *Light v. Wilson,* 663 S.W.2d 813, 815 (Tex.1983); *Medallion Homes Inc. v. Thermar Inv. Inc.,* 698 S.W.2d 400, 403 (Tex.App.—Houston [14th Dist.] 1985, no writ). Further, an agent is liable under the DTPA for affirmative misrepresentations, not-withstanding the agent's lack of knowledge or notice of the falsity thereof. *Henry S. Miller Co. v. Bynum,* 797 S.W.2d 51, 55 (Tex.App.—Houston [1st Dist.] 1990) *aff'd,* 836 S.W.2d 160 (Tex.1992).

Mr. Guilbeau testified that he has been a registered structural engineer for sixteen years. He stated that he performed the inspection on the house located at 12414 Brandywyne. He testified that he considered the settling of the foundation to be normal and that "I specifically stated on my report that this is a statement of condition" as of May 1988. The record is full of other indications of Mr. Guilbeau's individual participation, and the basis of the lawsuit is the tort committed by Guilbeau individually. The record also shows that Guilbeau is the president and major stockholder of the corporate-defendant. Further, a corporation can be held liable for the torts committed by its agents or employees while acting in the course and scope of their employment. *Allied Chemical Co. v. DeHaven,* 824 S.W.2d 257, 265 (Tex.App.— Houston [14th Dist.] 1992, no writ). The record sufficiently sustains a verdict of joint and several liability. We overrule appellant's points of error one through three.

In points four and five, appellant contends that there is an insufficient causal connection between the conduct and/or misrepresentations of the defendants and the plaintiff's damages to sustain a recovery under the DTPA. Appellant claims both that the award is against the great weight and preponderance of the evidence, and that there is no evidence or alternatively insufficient evidence to support the finding. The proper legal and factual standards for review are no evidence and insufficient evidence. Under the DTPA, the proper "causal connection" is not proxi-

mate cause but producing cause. Producing cause is "akin to the tort concept of factual causation because it lacks the element of foreseeability imposed by the standard of proximate causation." *Teague v. Bandy,* 793 S.W.2d 50, 57 (Tex.App.—Austin 1990, writ denied). Eliane Anderson testified that she received and signed the inspection report on May 7, 1988, and bought the house on May 31, 1988. When asked, "did you place any weight on the fact that his report reflected that there was no structural damage," she responded "definitely." She testified that she would not have purchased the house if she had known the true condition of the foundation. The record sufficiently shows that the defendants' actions and misrepresentations were the producing cause of Ms. Anderson's damages. We overrule appellant's fourth and fifth points of error.

 In point of error six, appellant claims that the award for mental anguish is against the great weight and preponderance of the evidence. Appellant did not have the burden of proof on the issue of mental anguish. Therefore, the proper standard of review is whether the evidence is factually insufficient to support the finding of mental anguish. We will review the point under that standard. "Mental anguish damages are recoverable where there is proof of a willful tort, willful and wanton disregard, or gross negligence." *Luna v. North Star Dodge Sales, Inc.,* 667 S.W.2d 115, 117 (Tex.1984). The trial judge specifically found that "the negligence on the part of the defendants constituted such an entire want of care as to constitute gross negligence." Proof of physical injury is no longer required for the recovery of mental anguish. *St. Elizabeth Hosp. v. Garrard,* 730 S.W.2d 649, 654 (Tex.1987). We will sustain the award of mental anguish if the overwhelming weight fails to indicate that the award was clearly wrong and unjust. Eliane Anderson testified that the foundational problems have had a "very devastating effect" on both herself and her two boys. She testified:

I can't do anything with the house.... It's cracking all over.... It's not the house that I intended to have for my kids.... It's not safe.... It's not the house that I bought.... I wanted to buy a house in excellent condition like I—the file of the real estate had mentioned. And the fact I found all these cracks and the fact I don't have the money to fix it—its very difficult for me to handle.... The reason I bought the house, [was] because its close to the school. My kids can walk to school. And I don't think I can get any money for that house right now.... I don't have any equity in the house. So, I won't be able to sell the house and buy another house in the neighborhood.

Considering and weighing all the evidence, the award of mental anguish is not so contrary to the overwhelming weight of the evidence that it is clearly wrong and unjust. We overrule appellant's sixth point of error.

 In his final two points, appellant claims that the award of gross negligence is both legally and factually insufficient. Gross negligence is defined as "such an entire want of care as to establish that the act or omission was the result of actual conscious indifference to the rights, safety, or welfare of the person effected." TEX.CIV.PRAC. & REM.CODE ANN. § 41.001(5) (Vernon 1992). Section 41.001(5) is a codification of the definition of gross negligence pronounced in *Burk Royalty Co. v. Walls,* 616 S.W.2d 911, 920 (Tex.1981). It is the defendant's state of mind which distinguishes gross negligence from negligence. *Williams v. Steves Indus., Inc.,* 699 S.W.2d 570, 573 (Tex.1985). However, a mental state may be inferred from the surrounding circumstances, namely, that a reasonable person would have realized that his conduct created an extreme degree of risk to the safety of others. *Id.*

The following transpired during the direct examination of the plaintiff's expert, Alvin Alleyne:

Q. What was the occasion for you inspecting the house [at 12414 Brandywyne] in March of 1988?

A. Another typical inspection where the—Ms. Anzio, I think, was considering buying this house.

Q. What conclusion did you draw?

A. There was some significant settlement of the house. In particular, at the front left of the house.... In my opinion, it is not possible for concrete beams to deflect to the extent visible along the left wall without cracks developing in the concrete.

Q. So, it was your opinion in March of—31st, 1988—that the—the foundation of this house on Brandywyne had cracked?

A. Yes, sir.

Q. And, if you are writing a report to someone, you—you would feel that it would be necessary to advise them of this condition, wouldn't you?

A. Yes.

A. Now, did you go out and inspect the house again at any other time?

A. Yes, I did.

Q. In your May of 1990 inspection, was your inspection—did—did it reflect that your inspection and your report back in March of 1988 had been in—incorrect?

A. No, it did not.

Q. It was consistent with it?

A. It was consistent with it.

Q. What did your inspection [in 1990] show?

A. It showed that there was significant settling of the foundation.... The house was in very much worse condition than it was when I first saw it.

Q. Do you believe that if an inspector or an engineer had gone out to the house two months after you wrote your report in 1988 that that engineer or inspector should have also made the same determination that you did?

A. Yes, I believe that.

Q. If they didn't find that that would be caused by the failure to meet the standard of care that is applicable to people in your profession?

A. Yes. I have to believe that.

Q. Let me show you ... Exhibit Four ... I will tell you that that's been identified as a report that was rendered by ED–MAR Engineering regarding the house at 12414 Brandywyne.... Do you agree with the first conclusion that the concrete has good structural integrity?

A. No, I don't.

Q. Do you agree with the second conclusion that the differential foundation settlement was normal back there in May of 19—or March or May of 1988 when you inspected it?

A. No, I don't.

Q. In your opinion, is this report suggesting that the house had certain qualities or benefits that it did not actually have, in other words, a good foundation with normal differential foundation settlement?

A. Yes, that's correct.

Mr. Alleyne also testified that the "deflection along the wall was fairly visible," and that he did not use any instruments at all for his inspection. "It was purely a visual inspection." He noted that there had been an attempt to "cover-up" the defects because the cracks in the brick had been "filled in." Even Ms. Anderson, a lay person, testified that since she has learned how to examine mortar and bricks, that she can tell there is a difference in the colors of the mortar between the bricks on the house. She stated that the brick is not solid like it should be. "It has a—like it has a crack in the middle and there is mortar in the middle of the brick. Not on the sides only." She stated that she didn't put any of the mortar there, and that it had to be there before she purchased the home. This foundational problem was not one which required expensive or specialized tools in order to be discovered. It was a fairly visible condition that even a lay person could see. Mr. Guilbeau had been a registered engineer for sixteen years. The Court could have inferred from the surrounding circumstances that Mr. Guilbeau's representations that the house had good structural integrity was not only negligent, but grossly negligent. We overrule appellant's seventh and eighth points of error. We affirm the judgment of the court below.