Jeanne Arnold NIX, Individually and d/b/a Jeanne Arnold ERA Real Estate, Appellant,

v.

Roselle BORN, Appellee.

No. 08-93-00021-CV.

Court of Appeals of Texas, El Paso.

Jan. 12, 1994.

Dan Sullivan, Andrews, for appellant.

Allen R. Stroder, Odessa, for appellee.

Before KOEHLER, BARAJAS and LARSEN, JJ.

## OPINION

KOEHLER, Justice.

In a damage suit which arose out of the sale of real estate, the jury found for the seller/plaintiff on three different theories of recovery, including the theory that the real estate agent along with two others had engaged in a civil conspiracy to breach the fiduciary duty owed by the agent to the seller. The trial court rendered judgment on the civil conspiracy verdict, awarding the seller a total of $230,800 in actual and exemplary damages, plus prejudgment interest, jointly and severally against each of the three defendants.

Appellant in four points of error[1] complains that the trial court erred in failing to transfer venue to Andrews County and that there was either no evidence or insufficient evidence to support the jury's findings on loss of profits, mental anguish, and that Appellant either ratified the conduct of her agent or engaged in conspiracy with him to defraud the seller. We affirm in part and reverse and render in part.

## RELEVANT FACTS

Roselle Born (Born), Appellee herein, was the owner of fifty-two contiguous residential lots located in Andrews County, Texas, purchased along with some additional lots in 1977. In 1983, Born's husband was ill, having suffered a stroke, and she, having borrowed money against the property, was under pressure to sell some of the lots in order to forestall a looming foreclosure. Born and her husband were good friends with Drexel Nix and his wife, Jeanne Arnold Nix, Appellant, the latter being a licensed real estate broker doing business as Jeanne Arnold ERA Real Estate in Andrews, Texas. On July 11, 1983, Born entered into a 90–day exclusive listing agreement with Drexel Nix in his capacity as an authorized agent and licensed sales representative of the real estate broker, for the sale of twenty-two of the lots at a listing price of $66,000.

On or about July 25, 1983, Drexel Nix met with Born in Odessa with an offer from a buyer named G & M Development to buy all fifty-two lots for a total of $40,000 or $42,000. Born rejected the offer, making it clear that she was only interested in selling the twenty-two lots. Despite that restriction, Drexel Nix continued to bring further offers from Max Mainord, a partner of G & M, to Born, stair-stepping upward some five or six new offers for all fifty-two lots until finally, Born agreed to accept G & M's offer to buy all of the lots for a total of $80,000. An earnest money contract was signed on October 3, 1983 by Born, by Drexel Nix as agent for the selling broker, and by Max Mainord and Benny Gaddis of G & M Development as

---

1. Appellant withdrew her fifth point of error during oral argument at time of submission.

buyers. However, earnest money of $2,000 was not paid to Born until October 13. Closing did not take place until November 30, 1983 at which time a new earnest money contract was entered into by Born, Drexel Nix, and Mainord and a warranty deed conveying the fifty-two lots was signed by Born. Sometime later, Born learned for the first time that Drexel Nix had been or become a partner of G & M Development.

Born thereafter sued Drexel Nix, Jeanne Arnold Nix, Individually and d/b/a Jeanne Arnold ERA Real Estate, and G & M Development, alleging that Drexel Nix had breached his fiduciary duty as Born's agent, in that he had not disclosed his relationship with the partnership, alleging that such actions constituted unlawful acts and practices in violation of the Deceptive Trade Practices Act, and also alleging that all of the defendants were guilty of conspiring against her to breach fiduciary duties. At the conclusion of the trial, Born prevailed on all points and the trial court awarded damages jointly and severally against the defendants based on the conspiracy findings. Jeanne Arnold Nix alone then brought this appeal.

### VENUE QUESTION AND STANDARD OF REVIEW

■ In her first point of error, Appellant asserts that the trial court erred in failing to transfer venue to Andrews County contending that no part of the causes of action alleged by Born occurred in Ector County.

■ In determining whether venue was proper, the appellate court must consider the entire record, including the trial on the merits. TEX.CIV.PRAC. & REM.CODE ANN. § 15.-064(b) (Vernon 1986). On appeal from trial on the merits, if venue was improper, it is in no event harmless error and shall be considered reversible error. *Id.* Where there is no evidence that the plaintiff has sought to defraud the trial court, jury findings affect-

ing venue, after a trial on the merits, are not controlling over an earlier venue ruling made by the trial court. *Humphrey v. May*, 804 S.W.2d 328, 330 (Tex.App.—Austin 1991, writ denied).

The general venue rule, both at the present time and at the time this suit was filed, provides that "all lawsuits shall be brought in the county in which all or part of the cause of action accrued or in the county of defendant's residence if defendant is a natural person." TEX.CIV.PRAC. & REM.CODE ANN. § 15.001 (Vernon 1986). Section 15.064(a) provides that in a venue hearing, the court is required to determine the venue question from the pleadings and affidavits. TEX.CIV.PRAC. & REM.CODE ANN. § 15.064(a) (Vernon 1986).

■ In her original petition, Born alleged in connection with her three causes of action that Drexel Nix brought the opening offer of $40,000 for all fifty-two lots to her in Ector County. The amended motion to transfer venue of Drexel Nix and Appellant asserted that they were residents of Andrews County, that all of the real property in question was located in Andrews County, and, after quoting the real property exception to the general venue rule,[2] that there were no exceptions and therefore venue was proper in Andrews County. The motion was supported by the affidavits of Appellant and Drexel Nix. In her response to that motion, Born asserted that the land exception did not apply because her causes of action were for fraud, breach of the fiduciary relationship, Deceptive Trade Practices Act violations, and conspiracy and that parts of such causes arose in Ector County in that she met in Ector County with Drexel Nix on two occasions and with Max Mainord's attorney to close the deal. Apparently, a venue hearing was held and the court overruled the motion to transfer.[3]

■ It is clear from her allegations and causes of action that Born was not seeking a

---

2. "Actions for recovery of real property or an estate or interest in real property, for partition of real property, to remove encumbrances from the title to real property, or to quiet title to real property shall be brought in the county in which all or a part of the property is located." TEX.CIV. PRAC. & REM.CODE ANN. § 15.011 (Vernon 1986).

3. Oddly, the record on appeal contains neither the order of the court overruling the motion to transfer or the statement of facts of the Nix venue hearing, but does contain the statement of facts of, and the order sustaining, the Max Mainord motion to transfer venue to Andrews County.

return of the fifty-two lots or any other relief included within the real property exception. Although the dispute arose out of the sale of land located in Andrews County and a final earnest money contract that was signed in that county, her causes of action were for damages sounding in tort, part of which allegedly occurred in Ector County. The Nix motion to transfer and affidavits did not meet the assertions in the petition and Born's response but merely asserted their residency in Andrews County and the real property venue exception which we hold was inapplicable. Properly pled venue facts unless specifically denied by the adverse party are to be taken as true for venue purposes. *Moriarty v. Williams*, 752 S.W.2d 610, 612 (Tex.App.—El Paso 1988, writ denied); Tex.R.Civ.P. 87(3)(a). Furthermore, the evidence in the trial tended to support Born's contentions that part of all three causes of action occurred in Ector County. Venue in a civil conspiracy suit may lie in any county in which an act in furtherance of the conspiracy took place. *Harshberger v. Reliable–Aire, Inc.*, 619 S.W.2d 478, 481 (Tex.Civ.App.—Corpus Christi 1981, writ dism'd). Point of Error No. One is overruled.

## EVIDENTIARY STANDARD OF REVIEW

In the second, third, and fourth points of error, Appellant asserts that the evidence was factually and legally insufficient to support certain jury findings which formed the basis for the trial court's judgment.

When presented with a "no evidence" challenge, the appellate court should consider only the evidence and reasonable inferences drawn therefrom which, when viewed in their most favorable light, support the jury verdict or court finding. All evidence and inferences to the contrary are to be disregarded. *Stafford v. Stafford*, 726 S.W.2d 14, 16 (Tex.1987); *Alm v. Aluminum Company of America*, 717 S.W.2d 588, 593 (Tex.1986). If there is more than a scintilla of evidence to support the questioned finding, the no evidence point fails. *Stafford*, 726 S.W.2d at 16.

When a factual sufficiency challenge is brought, the court must first examine all of the evidence, *Lofton v. Texas Brine Corpora-*

*tion,* 720 S.W.2d 804, 805 (Tex.1986); and after considering and weighing all of the evidence, the court may set aside the finding only if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex.1986). Since an appellate court is not a fact finder, it may not pass upon the credibility of the witnesses or substitute its judgment for that of the trier of fact, even if the evidence would support a different result. *Clancy v. Zale Corporation*, 705 S.W.2d 820, 826 (Tex.App.—Dallas 1986, writ ref'd n.r.e.).

## LOSS OF PROFITS

■ In her second point, Appellant challenges the legal and factual sufficiency of the evidence to support the jury's finding of $76,-000 in lost profits.

■ Born testified that the property was worth at least $3,000 per lot and that she was offered $130,000 for forty-eight lots in 1982, but that deal was not approved by the city, and that if aggressively marketed, the property (all fifty-two lots) could have sold for $250,000. Appellant argues that since the only "probative evidence" on loss of profits was elicited from Born, that testimony is insufficient to support a jury finding on the subject. Numerous cases, however, stand for the rule that an owner of real property is competent to testify as to the market value of his property. *State v. Knapp*, 740 S.W.2d 809, 818 (Tex.App.—El Paso), writ of error granted and judgment set aside, 742 S.W.2d 279 (Tex.1987); *Perry v. Texas Municipal Power Agency*, 667 S.W.2d 259, 263 (Tex. App.—Houston [1st Dist.] 1984, writ ref'd n.r.e.); *see also Urban Renewal Agency of the City of San Antonio v. Abdo*, 562 S.W.2d 872, 875 (Tex.Civ.App.—San Antonio 1978, writ ref'd n.r.e.); *State v. Dehnisch*, 437 S.W.2d 46, 48–49 (Tex.Civ.App.—Corpus Christi 1968, no writ). Moreover, another witness, Gayle Hester, a real estate agent in Andrews in 1988 and familiar with the property, testified that she considered the property in question comparable to other property sold by her in 1988 for $110,000 or $115,000. Appellant incorrectly assumes that since another witness, James Tompkins, a civil engineer and land surveyor, opined that the Hes-

ter property was not comparable for value purposes, that Hester's testimony was somehow negated. The jury is the sole judge of contradictory evidence, and it is within their province to determine the credibility of the witnesses and the weight to be given to their testimony. *Winograd v. Clear Lake City Water Authority*, 811 S.W.2d 147, 161 (Tex. App.—Houston [1st Dist.] 1991, writ denied). The record also indicates that Drexel Nix was of the opinion that one particular lot, having been developed, had a market value of $15,000 in 1983, the year the entire fifty-two lots were sold by Born, although it had not been developed at the time of that sale.

The Supreme Court in *Holt Atherton Industries, Inc. v. Heine*, 835 S.W.2d 80 (Tex.1992), set out guidelines for the determination of lost profits. Recovery for lost profits does not require that the loss be susceptible of exact calculation. *Id.* at 84. The amount of the loss must be shown by competent evidence with reasonable certainty. Opinions or estimates of lost profits must be based on objective data from which the amount of lost profits can be ascertained, but "it is not necessary to produce in court the documents supporting the opinions or estimates." *Id.* at 84.

Evidence adduced by both Born and Gayle Hester was sufficient to support a jury finding of $76,000 with regard to the profit Born could have made on the sale of all fifty-two lots if Drexel Nix had attempted to sell the property at or near the market value in 1983, rather than $80,000 price he got from G & M. Point of Error No. Two is overruled.

Appellant next contends that there was either no evidence or insufficient evidence to support the award of $50,000 for mental anguish, found by the jury and included in the judgment.

This point raises the recurring and difficult question of what kind of evidence is necessary to support a mental anguish damage award. Many cases have addressed this difficult subject. *See Worsham Steel Co. v. Arias*, 831 S.W.2d 81, 85–87 (Tex.App.—El Paso 1992, no writ) and *National Union Fire Ins. Co. of Pittsburgh, Pennsylvania v. Dominguez*, 793 S.W.2d 66, 72–73 (Tex.App.—El

Paso 1990), *writ granted on other points*, 36 Tex.Sup.Ct.J. 96 (October 24, 1992). In an oft-quoted passage from *Trevino v. Southwestern Bell Telephone Co.*, 582 S.W.2d 582, 584 (Tex.Civ.App.—Corpus Christi 1979, no writ), the Court stated:

> The term "mental anguish" implies a relatively high degree of mental pain and distress. It is more than mere disappointment, anger, resentment, or embarrassment, although it may include all of these. It includes a mental sensation of pain resulting from such painful emotions as grief, severe disappointment, indignation, wounded pride, shame, despair and/or public humiliation.

In this connection, Born testified that Appellant and her husband, Drexel Nix, were trusted friends of hers and her husband, that they visited each other's homes and went on trips together, that her husband had suffered a stroke leaving her to support the two of them, that some of Born's property was subject to foreclosure and thus, she was forced to sell either her home or real estate holdings, and that Appellant and Drexel Nix knew of the stroke and financial constraints. With that background and in that context, Born testified further on direct examination:

Q. The fact that your friend betrayed you, did that cause you any mental anguish?

A. Yes, I was hurt for quite a few years.

Q. But your friend—do you feel like Jeanne Nix knew what was going on also?

A. Yes, I do.

Q. And did that cause you some anguish also?

A. Yes, it did.

Q. Is that because you and your husband had been friends during the years and socialized together?

A. Yes, and my husband had tried to change his will, and he was going to leave his 15 lots to each one of our children. And I had to tell him after that that we didn't own the 30 lots any

more that we were supposed to own. And that was very stressful to him.

She then testified on cross-examination:

Q. Okay. And you are claiming some money for mental anguish; is that correct?

A. I have mental anguish.

Q. Part of the mental anguish was that you had to tell your husband that, when he said he was going to will the lots to the children—

A. Yes.

Q. —that you all didn't own them anymore?

A. That's correct.

Q. Of course, these were—these lots were your separate property, were they not?

A. They had become my separate property after my husband's illness, yes.

.      .      .      .      .

Q. Was there anything else that gave you mental anguish?

A. Yes, just the hurt that I felt.

Q. And that hurt was based on the fact that you had to sell your valuable property for $80,000?

A. That hurt me, yes.

Q. Okay.

A. That hurt me to sell off 52 lots instead of the 22 I had listed, yes, very much so. I had an emotional investment in this development.

■ This is the extent of Born's testimony touching on her claim for mental anguish compensation. Other than the conclusory statements that the events caused her anguish and that she had mental anguish, her primary emotion was one of feeling "hurt." Feeling "hurt" is a lesser emotion than anger, resentment, and embarrassment. In *Cronin v. Bacon*, 837 S.W.2d 265, 269 (Tex.App.—Fort Worth 1992, writ denied), the Court held that the plaintiff's testimony that he was "about as angry as I have ever been[,]" and "I'm so angry about [something that had gone wrong]" were not enough to support a recovery for mental anguish, and that the subjective mental symptoms to which he testified reflected "no more than

mere vexation, frustration, or anger." Moreover, suffering mental anguish as a repercussion of having to tell one's spouse that properties had been sold is, under the circumstances, unforeseeable, and thus inactionable. *See* 51 Tex.Jur.3d *Mental Anguish* § 24 (1986). Therefore, the record contains no evidence of the kind of mental pain and distress that would support mental anguish damages.

Born understandably relies on *Guilbeau v. Anderson*, 841 S.W.2d 517 (Tex.App.—Houston [14th Dist.] 1992, no writ), in which the Houston Fourteenth Court concluded that plaintiff's haltingly recited complaints about a house purchased as a result of defendant's negligent inspection justified an award of mental anguish since "the overwhelming weight fails to indicate that the award was clearly wrong and unjust." *Guilbeau*, 841 S.W.2d at 520. That Court, reciting from *Luna v. North Star Dodge Sales, Inc.*, 667 S.W.2d 115, 117 (Tex.1984) that mental anguish damages are recoverable where there is proof of a willful tort, willful and wanton disregard, or gross negligence, entirely ignored the body of law that requires a showing that the plaintiff has suffered a relatively high degree of mental pain and distress. Although the Supreme Court opinion in *Luna* does not detail any evidence of mental anguish, the opinion of the Court of Appeals in the same case does do so. *North Star Dodge Sales, Inc. v. Luna*, 653 S.W.2d 892, 897 (Tex.App.—San Antonio 1983), *aff'd in part and rev'd in part*, 667 S.W.2d 115 (Tex. 1984). (Luna testified that she began having migraine headaches, she was nervous, depressed, got mad, and angry.). Based on the summary of the testimony in *Guilbeau*, we cannot reconcile the mental anguish holding in that case with any other case of which we are aware.

In contrast to *Guilbeau* and in harmony with most Texas cases is *Parkway Co. v. Woodruff*, 857 S.W.2d 903 (Tex.App.—Houston [1st Dist.] 1993, no writ). Repeating the rule that "[p]roof of mental anguish requires a showing of a high degree of mental pain and distress that is more than mere worry, anxiety, vexation, embarrassment, or anger," the Court held that the plaintiffs' testimony

that the flooding of their house was "upsetting," "caused some friction," and they were upset because "it changed our life style" was insufficient and "simply does not demonstrate mental anguish as that term is defined by law." 857 S.W.2d at 914–16. Other cases from the same Court help clarify what kind of evidence is required to create a factual issue on mental anguish: *Phar–Mor, Inc. v. Chavira*, 853 S.W.2d 710, 712–13 (Tex.App.—Houston [1st Dist.] 1993, writ denied) (being very nervous and upset and suffered from embarrassment are no evidence of mental anguish); *J.B. Custom Design and Building v. Clawson*, 794 S.W.2d 38, 43 (Tex.App.—Houston [1st Dist.] 1990, no writ) (Plaintiffs' testimony that they had experienced "a tremendous amount of mental anguish, embarrassment, and distress over this situation" was sufficient to raise a factual issue on mental anguish).

Born's testimony that she was hurt by the fact that Drexel Nix got her to sell fifty-two lots (instead of the twenty-two lots she had intended to sell) for $80,000 and that she had mental anguish about telling her husband that she had sold the property does not rise to the level of a relatively high degree of mental pain and distress. The third point of error is sustained.

■■■ In her fourth and final point of error, Appellant urges legal and factual insufficiency of the evidence to support the jury finding that she either ratified the conduct of Drexel Nix or engaged in a conspiracy with him to breach the fiduciary duty owed by him to Born.

■■■ In order to uphold an award of exemplary damages against Appellant, there must be some evidence that Drexel Nix committed a willful, malicious, or fraudulent wrong, *LaCoure v. LaCoure*, 820 S.W.2d 228, 235 (Tex.App.—El Paso 1991, writ denied), and that she either ratified his acts or engaged in a conspiracy with him to commit those acts. An actionable civil conspiracy exists when there is a combination by two or more persons to accomplish an unlawful pur-

pose or to accomplish a lawful purpose by unlawful means. *Massey v. Armco Steel Co.*, 652 S.W.2d 932, 934 (Tex.1983).

■■■ In the present case, the jury found that Drexel Nix intentionally, knowingly, and in conscious disregard of Born's rights breached the fiduciary duties he owed to her and that Appellant along with Drexel Nix and G & M engaged in a conspiracy to breach such duties. Born contends that the record provides some evidence to support these findings. She points primarily to evidence that Appellant, Drexel Nix, and Max Mainord each deposited $800 on the same deposit slip into G & M's bank account and that $2,000 of that deposit was withdrawn in a money order payable to Born as earnest money with G & M named as "remitter." Despite Appellant's testimony that an $800 check from Appellant's escrow account which she deposited into G & M's account in her name was, in fact, Benny Gaddis' funds from a prior offer deposited on his behalf, the jury could disbelieve her and instead infer that Appellant was involved in a conspiracy.[4] Keeping in mind that the jury had the opportunity to observe the demeanor and listen to the testimony of the Appellant and other witnesses, the evidence of the deposit was alone sufficient to support the finding. However, Born's claim, unsupported by citation to authority, that the mere fact that Appellant and Drexel Nix were husband and wife working in the same business constituted evidence of probative value that they were involved in a conspiracy is without merit. The marital relationship does not, in itself, make one spouse the agent of the other spouse. *Johnson v. Holly Farms of Texas, Inc.*, 731 S.W.2d 641, 646 (Tex.App.—Amarillo 1987, no writ). There must be some evidence that Drexel Nix was subject to Appellant's control and that they had agreed to perpetrate a wrong on Born. *Traweek v. Larkin*, 708 S.W.2d 942, 946 (Tex.App.—Tyler 1986, writ ref'd n.r.e.). Appellant's fourth point of error is overruled.

---

4. There was also testimony by Drexel Nix that at or about the same time the $800 was allegedly deposited into the G & M account on behalf of Benny Gaddis, he (Gaddis) had withdrawn or was in the process of withdrawing from G & M partnership and Drexel was in the process of becoming a partner.

Having sustained Appellant's third point of error and overruled the remaining points, the judgment of the trial court is reversed and rendered as to the damages in the amount of $50,000 awarded for mental anguish and affirmed as to the remainder of the actual and exemplary damages in the amount of $180,800.

LARSEN, Justice, concurring and dissenting.

I concur with all aspects of the majority opinion, except that reversing the jury's award of mental anguish damages. For the reasons set out in my dissenting opinion in *Worsham Steel Co. v. Arias,* 831 S.W.2d 81, 88–89 (Tex.App.—El Paso 1992, no writ), I believe this mental anguish award should remain undisturbed. That Ms. Born was betrayed by trusted friends, that she was forced to sell her property to avoid foreclosure, only to later discover that the value of the property was much greater than the sales price, and that she had to inform her disabled husband of these facts, is surely enough to support a mental anguish award. Moreover, Ms. Born stated specifically "I have mental anguish." Once again, I believe the court strays from a just result when it plays semantic games, denying an award simply because the plaintiff did not use the magic words "grief, severe disappointment, indignation, wounded pride, shame, despair, and public humiliation." I would not require such a rote recital from a plaintiff who was clearly done wrong by people she trusted. I would uphold the mental anguish award.