**In re MISSOURI PACIFIC RAILROAD COMPANY d/b/a Union Pacific Railroad Company, Relator.**

No. 12-97-00361-CV.

Court of Appeals of Texas, Tyler.

March 26, 1998.

Deborah A. Newman, for relator.

Daniel J. Cohen, Charles W. Nichols, for real parties in interest.

Terry L. Calhoon, pro se.

Before RAMEY, C.J., and HOLCOMB and HADDEN, JJ.

*OPINION AFTER MOTION FOR REHEARING*

RAMEY, Chief Justice.

On January 30, 1998, this Court delivered an opinion conditionally granting Relator's Petition for writ of mandamus. Thereafter on February 17, 1998, Carl A. Ellis, the Real Party in Interest, filed a motion for rehearing. Having considered Ellis' motion for rehearing, Relator's Response, and Ellis' reply thereto, we overrule the motion, but withdraw our opinion of January 30, 1998, and substitute the following corrected opinion in its stead:

This original mandamus proceeding arises out of the trial court's failure to grant a motion to transfer venue under TEX.CIV.PRAC. & REM.CODE § 15.018.[1] We have jurisdiction to entertain this original proceeding pursuant to Section 15.0642.[2] We will conditionally grant the writ.

---

1. Unless otherwise specified, all further section number references shall be to the current edition of the Texas Civil Practice and Remedies Code.

2. Section 15.0642 provides that "A party may apply for a writ of mandamus with an appellate court to enforce the mandatory venue provisions of this chapter. An application for writ of mandamus must be filed before the later of: (1) the 90th day before the date the trial starts; or (2) the 10th day after the date the party receives notice of the trial setting." As no trial date had

## PROCEEDINGS BELOW

In November of 1996, Real Party in Interest Carl A. Ellis ("Ellis") sued Relator Missouri Pacific Railroad Company d/b/a/ Union Pacific Railroad Company ("the Railroad") under the Federal Employers Liability Act ("FELA").[3] Ellis' petition alleges that he was injured on the job in Harris County while working for the Railroad. He, however, filed his suit in Anderson County under TEX.CIV.PRAC. & REM.CODE Sections 15.036 and/or 15.037,[4] which had been repealed. His original petition pleaded venue as follows:

> Plaintiff is a resident of Houston, Texas. Defendants ... are corporations duly and legally incorporated under and by virtue of law. The Defendant Railroads each have an agency and/or representative in Anderson County, Texas thereby establishing venue pursuant to Section 15.036 and/or Section 15.037 of the Civil Practice and Remedies Code. Defendants have a principal place of business in the State in Anderson County, Texas including specifically their shop, yards and facilities in Palestine, Texas. Defendants may be served with process by serving their agent, Norma Davenport, 808 Travis, Suite 620, Houston, Harris County, Texas 77002.

On December 13, 1996, the Railroad filed Defendant's Motion to Transfer Venue and Original Answer Subject Thereto ("Motion to Transfer"), which specifically denied the venue facts as pleaded by Ellis and sought a transfer of venue to Harris County pursuant to Section 15.018(b)(2),[5] the mandatory venue statute for FELA suits, which had supplanted the prior venue statute as of August 28, 1995. Section 15.018 provides:

> (a) This section only applies to suits brought under the federal Employers' Liability Act (45 U.S.C. Section 51 et seq.) or the Jones Act (46 U.S.C. Section 688).

> (b) All suits brought under the federal Employers' Liability Act or the Jones Act shall be brought:

> (1) in the county in which all or a substantial part of the events or omissions giving rise to the claim occurred;

> (2) in the county where the defendant's principal office in this state is located; or

> (3) in the county where the plaintiff resided at the time the cause of action accrued.

TEX.CIV.PRAC. & REM.CODE § 15.018 (Vernon Supp.1998). Furthermore, Section 15.001(a) defines "principal office" as follows: "Principal Office" means a principal office of the corporation ... in this state in which the decision makers for the organization within this state conduct the daily affairs of the organization. The mere presence of an agency or representative does not establish principal office.

In support of the Railroad's alleged venue facts that its principal office was in Harris, not Anderson County, it attached the affidavit of Norma G. Davenport, one of the Railroad's two General Solicitors in Texas, and one of the highest ranking corporate officers for the Railroad in Texas. Davenport's affidavit asserts that she: (1) oversees and conducts the business and legal affairs of the Railroad in Texas; (2) is the Registered Agent in Texas for the Railroad; (3) is the corporate officer in charge of litigation in Texas; and (4) also conducts corporate operations, makes policy decisions and supervises and coordinates functions within Texas, all from her Harris County, Texas offices. Davenport's affidavit also states that her offices are the Railroad's "designated principal office in Texas" where the Railroad's decision makers conduct their daily affairs, and that

---

been set at the time this proceeding ensued, the petition is timely.

3.  45 U.S.C. § 51, *et seq.*

4.  Sections 15.036 and 15.037 had provided that private corporations and foreign corporations doing business in this state could be sued in any county in which the corporation had an agency or representative. Section 15.037, however, was

repealed by the 74th Leg. ch. 138 § 10, eff. Aug 28, 1995. Section 15.036 had also provided that suit could be brought in the county where the private corporation's principal office was situated.

5.  It is undisputed that at the time in question, Ellis both resided and was injured in Harris County, Texas.

the Railroad "does not now or did it at the time of the Plaintiff's injury maintain a principal office in Palestine, Anderson County, Texas." Davenport's affidavit also swears that the Railroad's operations conducted in Harris County far exceed its operations in Anderson County, "where there is merely a representative of the corporation." [6]

Several months later, on June 11, 1997, Ellis filed Plaintiff's Memorandum of Law in Opposition to Defendants' Motion to Transfer Venue ("Response"). The Response generally attacked the Railroad's assertion that its principal office was in Harris County, and asserted that the Railroad had failed to establish under Section 15.018 that it did not, and does not have, a principal office in Anderson County. Additionally, the Response explained why, in Ellis' view, Anderson County was "the" or at least "a" principal office of the Railroad. In so doing, Ellis employed a three-part analysis apparently formulated from his interpretation of *McKinney v. Nacogdoches Indep. Sch. Dist.,* 489 S.W.2d 161, 170 (Tex.Civ.App.—Tyler 1972, writ granted) *reversed in part,* 504 S.W.2d 832 (Tex.1974). The three categories of his analysis included: (1) presence and authority of decision makers [supported by Response Exhibit C]; (2) workforce level [supported by Response Exhibits D and E]; and (3) nature and importance of operations [supported by Response Exhibit F]. In support of his Response, Ellis attached Exhibits "A" through "F." The remainder of Ellis' Response was devoted to his constitutional argument, which is not before us.

On July 3, 1997, the Railroad filed its Reply to Ellis' Response. Therein, it pointed out that under TEX.R.CIV.P. 87(3)(a), since the Railroad specifically denied Ellis' venue facts, Ellis, not the Railroad, had the burden of proving that venue lay in Anderson County. The Railroad also argued that Ellis has neither pleaded nor proved the Railroad had its "principal office" in Anderson County under Section 15.018, had failed to amend his pleadings after notice, and had failed to comply with TEX.R.CIV.P. 87(3)(a), which required that Ellis specifically deny the Railroad's venue facts showing that venue lay in Harris County. Rule 87(3)(a) states in pertinent part: "All venue facts, when properly pleaded, shall be taken as true unless specifically denied by the adverse party." Additionally, the Railroad's Reply raised objections to Ellis' Response Exhibits "A," "B," and "F." [7] Finally, the Railroad asserted that it had established prima facie proof of its "principal office" in Harris County. It then presented further argument and supporting evidence which included: (1) Exhibit "A," a properly authenticated copy of the transcription from the April 11, 1995 meeting of the Senate Economic Development Committee wherein the wording of proposed Section 15.018 was discussed; (2) Exhibit "B," excerpts from Merrick Walton's deposition testimony; and (3) Exhibit "C," Merrick Walton's affidavit refuting representations made in Friedman's affidavit and asserting additional fact which show that the Railroad's principal office is in Harris County.

Eight days after the Railroad's Reply was filed, the Honorable Jerry Calhoon, Respondent herein, heard the Railroad's Motion to Transfer venue. In addition to the Railroad's written objections to Ellis' Response exhibits, at the commencement of the hearing, the Railroad objected to the filing of Ellis' certification of Senate proceedings of Senate Bill 22, on grounds that it was late under TEX.R.CIV.P. 87 and 88. The Railroad further requested that the court consider the "competent" evidence filed in the case. Respondent, however, interrupted Railroad's counsel, acknowledged that this was a "test case of this new statute," and stated the following:

---

6. The Railroad's sworn Petition for Writ of Mandamus represents that the Railroad has one senior manager who resides in Anderson County, Texas.

7. Exhibits "A" and "B," which appeared to be excerpts from legislative history, were objected to on the basis that they were not properly authenticated and were not attached to an affidavit. TEX.R.CIV.P. 88. Exhibit "F," the affidavit of C. Marshall Friedman, was objected to on the basis that he was an interested witness in the case, and not an employee of the Railroad, but nevertheless asserted personal knowledge of facts peculiar to the Railroad's operations.

What I am inclined to do is to consider all relevant evidence. So I am going to overrule your objection to the filing of the documents the Plaintiff has tendered, because I want everything to be fully developed for this all-important test case, as you put it. Now, if that makes you want to request a continuance, I will afford you a continuance of this venue hearing. But otherwise, I will go ahead and hear it now. **But I want you to understand I am planning to consider whatever those documents are.** (emphasis added).

Thereafter, following arguments of counsel, Respondent stated:

All right. I think that I see the issue. I am inclined to think that the legislature did not intend for there to be one and only one principal place of business. The question then becomes whether or not there's enough presence in Palestine to make this a principal place of business.

Respondent then took the case under advisement, and on July 14, 1997, he signed an Order Overruling Motion to Transfer Venue on July 14, 1997. On October 8, 1997, the Railroad sought mandamus relief from that order under Section 15.0642. Its petition raises five arguments.

### PREREQUISITES FOR A WRIT OF MANDAMUS

Mandamus is an extraordinary remedy, and it will lie only to correct a clear abuse of discretion or the violation of a duty imposed by law when there is no adequate remedy by appeal. *Walker v. Packer*, 827 S.W.2d 833, 841 (Tex.1992, orig. proceeding); *Johnson v. Fourth Court of Appeals*, 700 S.W.2d 916, 917 (Tex.1985). As noted by the supreme court in *Walker:*

With respect to resolution of factual issues or matters committed to the trial court's discretion, for example, the reviewing court may not substitute its judgment for that of the trial court. *See Flores v. Fourth Court of Appeals*, 777 S.W.2d 38, 41–42 (Tex.1989) (holding that determination of discoverability under TEX.R.CIV.P. 166b(3)(d) was within discretion of trial court); *Johnson*, 700 S.W.2d at 918 (holding that trial court was within discretion in granting a new trial "in the interest of

justice and fairness"). The relator must establish that the trial court could reasonably have reached only one decision. *Id.* at 917. Even if the reviewing court would have decided the issue differently, it cannot disturb the trial court's decision unless it is shown to be arbitrary and unreasonable. *Johnson*, 700 S.W.2d at 918. (emphasis added).

On the other hand, review of a trial court's determination of the legal principles controlling its ruling is much less deferential. A trial court has no "discretion" in determining what the law is or applying the law to the facts. Thus, a clear failure by the trial court to analyze or apply the law correctly will constitute an abuse of discretion, and may result in appellate reversal by extraordinary writ. *See Joachim v. Chambers*, 815 S.W.2d 234, 240 (Tex.1991) (trial court abused discretion by misinterpreting Code of Judicial Conduct); *NCNB Texas National Bank v. Coker*, 765 S.W.2d 398, 400 (Tex.1989) (trial court abused discretion by failing to apply proper legal standard to motion to disqualify counsel); *Eanes ISD v. Logue*, 712 S.W.2d 741, 742 (Tex.1986) (trial court abused discretion by erroneously finding constitutional violation).

*Walker*, 827 S.W.2d at 840.

■ In the instant case, since Section 15.0642 provides for mandamus review of venue decisions under the mandatory venue provisions of Chapter 15 of the TEX.CIV.PRAC. & REM.CODE, we must determine only whether the trial court committed a clear abuse of discretion or violated a ministerial act. *KJ Eastwood Inv., Inc. v. Enlow*, 923 S.W.2d 255, 258 (Tex.App.—Fort Worth 1996, orig. proceeding) (holding that the enactment of Section 15.0642 obviates the need to show "no adequate remedy by appeal.")

### ISSUES I AND II:

**Did Respondent Abuse his Discretion by Failing to Consider the Railroad's Motion to Transfer Venue in Accordance with the Proof and Pleading Requirements mandated by Tex.R.Civ.P. 87 and 88.**

■ As noted above, the Railroad challenged Ellis' pleading of venue in Anderson

County under repealed Sections 15.036 and 15.037, and instead, asserted that a transfer of venue to Harris County was mandated under Section 15.018(b)(2). The procedure for obtaining a transfer of venue is set forth in TEX.R.CIV.P. 87.[8]

Under TEX.R.CIV.P. 87(2)(a), Ellis had the initial duty to properly plead and prove that venue was maintainable in Anderson County, Texas. Venue, thereafter, would be taken as true unless the Railroad specifically denied Ellis' venue facts. TEX.R.CIV.P. 87(3)(a). Since, as shown above, the Railroad did specifically deny Ellis' venue facts, Ellis then had the burden of making a prima facie case of venue in Anderson County. *Kimmell v.*

*Leoffler,* 791 S.W.2d 648, 653 (Tex.App.—San Antonio 1990, writ denied). As was noted by the supreme court in *Wilson v. Texas Parks and Wildlife Department:*

> If a defendant objects to the plaintiff's venue choice and properly challenges that choice through a motion to transfer venue, the question of proper venue is raised. TEX.R.CIV.P. 86. The burden is on the plaintiff to prove that venue is maintainable in the county of suit. *Id.* 87–2(a). If the plaintiff fails to meet this burden, the trial court must transfer the lawsuit to another specified county of proper venue.(n1)[9] TEX.CIV.PRAC. & REM.CODE ANN. § 15.063(1).

---

8. Rule 87 provides in relevant part that

    **1. Consideration of Motion.**

    . . . .

    Except on leave of court, any response or opposing affidavits shall be filed at least 30 days prior to the hearing of the motion to transfer. The movant is not required to file a reply to the response but any reply and any additional affidavits supporting the motion to transfer must, except on leave of court, be filed not later than 7 days prior to the hearing date.

    **2. Burden of Establishing Venue.**

    **(a) In General.** A party who seeks to maintain venue of the action in a particular county . . . has the burden to make proof, as provided in paragraph 3 of this rule, that venue is maintainable in the county of suit. A party who seeks to transfer venue of the action to another specified county . . . has the burden to make proof, as provided in paragraph 3 of this rule, that venue is maintainable in the county to which transfer is sought. A party who seeks to transfer venue of the action to another specified county . . . on the basis that a mandatory venue provision is applicable and controlling has the burden to make proof, as provided in paragraph 3 of this rule, that venue is maintainable in the county to which transfer is sought by virtue of one or more mandatory venue exceptions.

    . . . .

    **3. Proof.**

    **(a) Affidavit and Attachments.** All venue facts, when properly pleaded, shall be taken as true unless specifically denied by the adverse party. **When a venue fact is specifically denied, the party pleading the venue fact must make prima facie proof of that venue fact;** provided, however, that no party shall ever be required for venue purposes to support by prima facie proof of the existence of a cause of action or part thereof, and at the hearing the pleadings of the parties shall be taken as conclusive on the issues of existence of a cause of action. **Prima facie proof is made when the venue facts are properly pleaded and an affida-** vit, and any duly proved attachments to the affidavit, are filed fully and specifically setting forth the facts supporting such pleading. Affidavits shall be made on personal knowledge, shall set forth specific facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify.

    **(b) The Hearing.** The court shall **determine the motion to transfer venue on the basis of the pleadings,** any **stipulations** made by and between the parties **and such affidavits and attachments as may be filed by the parties in accordance with the preceding subdivision of this paragraph 3 or of Rule 88.**

    **(c)** *If a claimant has adequately pleaded and made prima facie proof that venue is proper in the county of suit* as provided in subdivision (a) of paragraph 3, **then the cause shall not be transferred but shall be retained in the county of suit, unless the motion to transfer is based on** . . . **an established ground of mandatory venue.** A ground of mandatory venue is established when the party relying upon a mandatory exception to the general rule makes prima facie proof as provided in subdivision (a) of paragraph 3 of this rule.

    **(d)** In the event that the parties shall fail to make prima facie proof that the county of suit or the specific county to which transfer is sought is a county of proper venue, then the *court may direct the parties to make further* proof. (emphasis added).

    TEX.R.CIV.P. 88 provides in relevant part: "Deposition transcripts, responses to requests for admission, answers to interrogatories and other discovery products containing information relevant to a determination of proper venue may be considered by the court in making the venue determination **when they are attached to, or incorporated by reference in, an affidavit of a party, a witness or an attorney who has knowledge of such discovery.**" (emphasis added)

9. "In such a case, the right to chose a proper venue passes to the defendant who must prove

*Wilson v. Texas Parks and Wildlife Depart.,* 886 S.W.2d 259, 260–261 (Tex.1994); *Kimmell,* 791 S.W.2d at 653. Rule 87(3)(a) provides that prima facie proof is made "when the venue facts are properly pleaded and an affidavit, and any duly proved attachments to the affidavit, are filed fully and specifically setting forth the facts supporting such pleading."

In the instant case, it is undisputed that Ellis did not amend his original petition to excise his original venue allegations under repealed Sections 15.036 and 15.037, and substitute properly pleaded venue facts demonstrating "principal office" under Section 15.018. *See* TEX.R.CIV.P. 63. Moreover, Ellis' Response did not properly plead venue facts. Thus, having failed to properly plead venue prior to the hearing on the motion to transfer, Ellis failed to make prima facie proof of venue in Anderson County. TEX. R.CIV.P. 87(3)(a); *Wilson,* 886 S.W.2d at 260.

Additionally, even if Ellis had re-pleaded venue, his venue proof failed to satisfy the requirements of Rules 87(3)(a) and 88:

(1) Ellis' Response Exhibits "A," "B," "D," and "E" were not competent venue evidence under Section 15.064(a) because they had not been properly authenticated by attachment to or incorporation by reference in affidavits under TEX.R.CIV.P. 87(3)(a) and 88.[10]

(2) Response Exhibit "C", deposition excerpts of Merrick Walton, was likewise not properly authenticated by Ellis in his Response or attachments thereto; however, on rehearing, he argues that because Merrick Walton's deposition was independently authenticated by the Railroad, he did not need to authenticate the excerpts he attached. Because the Railroad, in its response to the motion for rehearing, has stipulated that Walton's deposition was properly authenticated for all purposes, we will assume, without deciding, that it was properly before Respondent.

(3) Response Exhibit "F," although an affidavit, was objected to by the Railroad on grounds that the affiant, Marshall Friedman, who had never worked for the Railroad, had no personal knowledge of the facts set forth therein, and it was objected to on grounds that Friedman was an interested party, i.e., Ellis' own attorney. Unquestionably, Friedman's affidavit was inappropriate venue evidence. As noted above, to be admissible "[a]ffidavits shall be made on personal knowledge, shall set forth specific facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify." TEX.R.CIV.P. 87(3)(a). Additionally, State Bar Rule 3.08 generally precludes a party's attorney from acting as a witness. *See* TEX. DISCIPLINARY R. PROF'L CONDUCT 3.08(a), *reprinted in* GOVERNMENT CODE, tit. 2, subtit G app. A (Vernon Supp.1997–98) (Tex. State Bar R. art., § 9); *Mauze v. Curry,* 861 S.W.2d 869 (Tex.1993) (requiring disqualification of attorney who executed controverting affidavit on contested fact issue in attempt to defeat summary judgment motion.).

Thus, under Section 15.064(a), which states that "[t]he court shall determine venue questions from the pleadings and affidavits," Respondent was only authorized to consider Exhibit "C" of Ellis' venue evidence. *Cox Engineering, Inc., v. Funston Machine and*

---

that venue is maintainable in the county to which transfer is sought. TEX.R.CIV.P. 87–2(a)."

**10.** On rehearing, Ellis complains that we are not authorized to exclude Exhibits "D" and "E" from consideration because the Railroad did not specifically object to them. For two reasons, we disagree. First, the Railroad requested that Respondent consider only "competent" evidence in reaching its decision. Under Rule 87(3)(a), competent evidence includes only affidavits and "duly proved attachments to affidavits." Second, review by mandamus requires us to determine whether the trial court erred in "what the law is" or in "applying the law to the facts." *Walker,* 827 S.W.2d at 840. In venue consider-ations, the trial court is mandated to determine the motion to transfer on the basis of the pleadings, stipulations, "and such affidavits and attachments as may be filed by the parties *in accordance with the preceding subdivision of this paragraph 3, and or of Rule 88.*" TEX.R.CIV.P. 87(3)(b). (emphasis added). Unlike TEX.R.CIV.P. 166a(f) which pertains to the use of summary judgment affidavits and attachments, Rule 87(3)(b), contains no provision stating: "Defects in the form of affidavits or attachments will not be grounds for reversal unless specifically pointed out by objection by an opposing party ..." TEX.R.CIV.P. 166(f) (Vernon Supp.1997).

*Supply Co.,* 749 S.W.2d 508, 512 (Tex.App.— Fort Worth 1988, no writ), and a review of that exhibit fails to establish a prima facie case of venue in Anderson County.[11]

Ellis having failed to establish venue in Anderson County, the question then becomes whether venue should have been transferred to Harris County under the mandatory venue exception set forth in Section 15.018(b)(2).[12] As noted above, in its motion to transfer, the Railroad pleaded venue under Section 15.018, and Ellis' Response did not specifically deny those venue facts as required by TEX.R.CIV.P. 87(3)(a). Thus, the Railroad's venue facts had to be taken as true by the trial court. TEX.R.CIV.P. 87(3)(a); *Nix v. Born,* 870 S.W.2d 635, 638 (Tex.App.—El Paso 1994, no writ); *Maranatha Temple, Inc. v. Enterprise Products Co.,* 833 S.W.2d 736, 740 (Tex. App.—Houston [1st Dist.] 1992, writ denied); *Moriarty v. Williams,* 752 S.W.2d 610, 612 (Tex.App.—El Paso 1988, writ denied).

Moreover, even if it were determined that Ellis had specifically denied the Railroad's venue facts, we have reviewed the properly authenticated exhibits attached to the Railroad's Motion to Transfer and Reply, and concluded that the Railroad presented prima facie proof of venue in Harris County under Section 15.018(b)(2). The contents of Exhibit "A" to the Railroad's Motion to Transfer, which is the affidavit of Norma Davenport, was discussed above, under the heading "Proceedings Below." Additional proof was attached to the Railroad's reply including: **Exhibit "A"** included testimony by Senator Montford which stated (attached to an affidavit):

[A]s I mentioned, this is the second Committee Substitute, and the primary purpose in, ah, re-doing the venue provision was to stop the unconscionable practice of forum shopping at random throughout Texas to find a favorable forum in that there needs to be some reasonable connection, ah, between the actor event, or the, at least the, ah location of a party and where a lawsuit is filed, now what the bill does, in terms of differing from the previous bills, ah, a definition of the term principal office has been added, ah, to, ah bring focus to, a, one location that adopts the nerve center test, used by the federal courts, to determine what constitutes a principal office instead of having a variety of possible constructions where a principal office could be. . . .

Montford also explained Section 15.018 as follows:

Ah, Section 15.018 deals with venue and personal injury cases, we changed that to deal with 'em like any other lawsuit, and that is where all, or a substantial part of the events, or emissions, giving rise to the claim occurred, or the defendant's residence, or principal office. And again, that relates to the definition I had previously delineated.

**Exhibit "B"** an excerpt from Merrick Walton's deposition testimony, which was properly authenticated and filed, in its entirety, with the trial court on May 15, 1997. TEX. R.CIV.P. 88.

Exhibit "B" revealed that at about the time of section 15.018's enactment, Walton

11. Ellis' Exhibit "C", consists of excerpts from the deposition testimony of Merrick Walton, the Railroad's general solicitor and executive officer who manages a regional field office of the law department. Walton testified that the Railroad had between four and six supervisory employees in Anderson County who were categorized by the Interstate Commerce Commission ("ICC") as category 901 employees, which as he vaguely recalled, seemed to embrace "a fairly broad range of supervisory and management employees." Two of these category 901 employees are Steve Carmichael, Manager of Train Operations, and Al Harris, Director of the system car shop. Harris' decision-making responsibilities include: supervision of the supervisors who are over the carmen and work on the cars; maintenance of inventory and adequate work force; work scheduling; vacation scheduling; labor relations issues; employee relations, and employee discipline. Harris does not report to anyone in Texas, but reports to the Senior Mechanical Officer in Omaha, Nebraska. No duties for Carmichael were provided.

12. The parties are in dispute as to whether Section 15.018(b)(2) contemplates that a defendant could have more than one principal office in this state. However, we need not resolve that dispute since even assuming that there could be more than one principal office of the Railroad, venue cannot lie in Anderson County in the instant case due to Ellis' failure to make his prima facie case under TEX.R.CIV.P. 87.

and Davenport, the two Houston senior executives for the Railroad, discussed and concluded that under that statute, Harris County was the Railroad's principal office for the following reasons: (1) they were the only two senior officers for the Railroad in Texas, and they were both situated in Harris County;[13] (2) both the Railroad's registered agent and registered officer were in Harris County; (3) in terms of management, Harris County was the place where the most senior managers were located, and the place where the higher level management decisions and policies were made because "to the extent that there is a managerial focus within the state, in the sense of other areas reporting to that center, it seemed clear to us that Harris County was the place where the decision makers work and where by far the great majority of other management employees in the state report"; (4) there are two superintendents of transportation in Harris County; whereas there is only one in Fort Worth and one in San Antonio.

With regard to the fact that Harris, the director of car and locomotive shops, reported to someone in Nebraska rather than anyone in Texas, Walton testified that reporting was done this way "because the size of those operations [in Texas] relative to the others [in Texas] is very small."

Exhibit "C," the affidavit of Merrick Walton, General Solicitor for the Railroad, represented the following facts based upon his own personal knowledge:

- Below the level of executive officer is Senior Manager. These managers include Superintendents of Transportation and Directors of Track. Policy and serious operational decisions are made by persons at this level or above. Anderson County has one Senior Manager, but Harris County has 13 of them, the most in any county in Texas. Moreover, Anderson County has no one above the Senior Manager level, whereas Harris County currently has four.[14]

- The reason Mr. Harris, Anderson County's car shop manager reports to the Omaha, Nebraska office is that the locomotive shops, car shops, and supply operations are not large enough in Texas to justify having intermediate officers in the management structure of this state.

- The car shop in Palestine, Anderson County, is not one of two "major car shops" in the system. There are four major Railroad repair yards in Harris County alone that repair many more locomotives and freight cars each day than Anderson County. Similarly, in Tarrant County, the Railroad yard there services and repairs more locomotives and freight cars per day than Anderson County's repair shops.

- Intermodal transportation of goods is a major form of transporting goods by rail. It consists of containers and piggybacks being loaded on and off flat bed rail cars. There is no intermodal traffic at Anderson County, whereas Harris County has very heavy intermodal traffic of over 500 transfers per day. (Bexar County has about 20 such transfers per day.)

- Anderson County's Railroad facility does not generate any revenues; it serves as a crew-change point. In contrast, Harris County's facility generates in excess of 60 million dollars per year, Bexar County generates 6.5 million dollars, and Tarrant County generates 29 million dollars.

- ICC category 901 employee classifications are considered "executives, officials, and staff assistants." The Railroad employs 246 category 901 employees in Texas: 143 of them are located in Harris County, whereas, only 5 of them are located in Anderson County.

- Anderson County has only about one third the size workforce that Harris County: 350 total employees versus

---

13. At the time the underlying suit was filed, Davenport and Walton were the two senior executive officers in Harris County. Now, however, there are two more: Charles Malone and Bud Jacquinot who came after Southern Pacific merged with the Railroad.

14. By way of comparison, Walton points out that Bexar County has two senior managers, and Tarrant County has five.

980.[15] Moreover, there are two types of employees: agreement and non-agreement employees. Agreement employees are hired pursuant to a collective bargaining agreement. Non-agreement employees work generally in non-labor and managerial capacities. Only a select few of these non-agreement employees would constitute decision makers. Moreover, there are only 14 non-agreement employees in Anderson County, but there are 96 of them in Harris County (There are 75 in Tarrant County and 42 in Bexar County).

- The Railroad operates approximately 1,200 freight trains on a daily basis. Approximately 92 of them pass daily through Harris County, and only 18 pass through Anderson County. By comparison, 60 trains pass through Tarrant County daily.

As noted above, a trial court has no discretion in determining what the law is or applying the law to the facts. *Walker*, 827 S.W.2d at 841. In the instant case, Respondent's failure to apply the pleading and proof requirements of TEX.R.CIV.P. 87 and TEX.CIV. PRAC. & REM.CODE ANN. 15.064(a) to the case below, constituted an abuse of discretion. Since, on the evidence before it, the Railroad did not establish a prima facie case of venue in Anderson County, but the Railroad did establish a prima facie case of venue in Harris County, Respondent clearly abused his discretion in failing to grant the Railroad's motion to transfer venue to Harris County, Texas. Having so decided, we need not address the Railroad's remaining complaints.

## CONCLUSION

Accordingly, we lift the stay imposed by this Court on February 24, 1998, and conditionally grant the Railroad's petition for writ of mandamus. Respondent is hereby directed to, within 25 days herefrom, vacate his order of July 14, 1997, and to enter an order transferring venue to Harris County. As is our custom, we will withhold issuance of the writ for 25 days, to allow Respondent the opportunity to conform his actions to this opinion. While we are confident that Re-

spondent will comply, the writ will issue if no action is taken within the time provided. Any further relief sought by the Railroad but not otherwise specifically addressed herein is denied.