ACCEPTED
06-14-00102-CV
SIXTH COURT OF APPEALS
TEXARKANA, TEXAS
4/14/2015 5:09:23 PM
DEBBIE AUTREY
CLERK

NO. 06-14-00102-CV

FILED IN
6th COURT OF APPEALS
TEXARKANA, TEXAS
4/15/2015 9:52:00 AM
DEBBIE AUTREY
Clerk

IN THE SIXTH COURT OF APPEALS

Johnny E. Webb, III,

Appellant,

v.

Alex Rodriguez, et al.,

Appellees.

On appeal from
95th Judicial District Court, Dallas County, Texas
Hon. Ken Molberg, Presiding Judge

## APPELLEES' RESPONSE BRIEF

Andrew K. York
Jim Moseley
Gray Reed & McGraw, P.C.
1601 Elm Street
Suite 4600
Dallas, Texas 75201

Bryan Stevens
Barrett Lesher
Hallett & Perrin, PC
1445 Ross Avenue
Suite 2400
Dallas, Texas 75202

Mark L. Johansen
Rafael C. Rodriguez
Gruber Hurst Elrod
Johansen Hail
Shank LLP
1445 Ross Avenue
Suite 2500
Dallas, Texas 75202

2570666.5

## IDENTITY OF PARTIES AND COUNSEL

In accordance with Texas Rule of Appellate Procedure 38.2(a)(1)(A), Appellees provide the following complete list of all parties to the trial court's judgment or order appealed from, and the names and addresses of all trial and appellate counsel:[1]

**Appellant/Plaintiff:**

Johnny E. Webb, III

**Appellate & Trial Counsel:**

Darrell J. O'Neal
Law Office of Darrell J. O'Neal
TN State Bar No 20927
2129 Winchester Road
Memphis, TN  38116
Telephone:  (901) 345-8009
Facsimile:  (901) 345-8014
domemphislaw@aol.com

Melvin Houston
Melvin Houston & Associates
TX State Bar No. 00796559
1776 Yorktown, Suite 350
Houston, TX  77056
Telephone:  (713) 212-0600
Facsimile:  (713) 212-0290
mhouston@gotellmel.com

---

[1]    Appellant's brief did not identify Jim Moseley of Gray Reed & McGraw, P.C. as trial counsel for Appellees Lucien J. Tujague, Jr. and Dominion Gas Holdings, LP (*see* Reporter's Record ("R.R.") Vol. 4 at p. 2), and failed to identify Barrett Lesher of Hallett & Perrin, P.C. as trial counsel for Appellees IDT Energy, Inc., Shuk Holdings, LLC, and Diversegy, LLC. *See* Clerk's Record ("C.R.") 472.  Messrs. Moseley and Lesher are also serving as appellate counsel for their respective clients.

2570666.5

| Appellees/Defendants: | Appellate & Trial Counsel: |
|---|---|
| Lucien J. Tujague, Jr. and Dominion Gas Holding, LP | Andrew K. York<br>Jim Moseley<br>Gray Reed & McGraw, P.C.<br>1601 Elm Street, Suite 4600<br>Dallas, TX 75201<br>Telephone: (214) 954-4135<br>Facsimile: (214) 953-1332<br>dyork@grayreed.com<br>jmoseley@grayreed.com |
| Shuk Holdings LLC, IDT Energy Inc., and Diversegy, LLC | Bryan Stevens<br>Barret Lesher<br>Hallet & Perrin, P.C.<br>1445 Ross Avenue, Suite 2400<br>Dallas, TX 75202<br>Telephone: (214) 953-0053<br>Facsmile: (214) 922-4142<br>bstevens@hallettperrin.com<br>blesher@hallettperrin.com |
| Alex Rodriguez | Mark L. Johansen<br>Rafael C. Rodriguez<br>Gruber Hurst Elrod Johansen<br>Hail Shank LLP<br>1445 Ross Avenue, Suite 2500<br>Dallas, TX 75202<br>Telephone: (214) 855-6800<br>Facsimile: (214) 855-6808<br>mjohansen@ghjhlaw.com<br>rrodriguez@ghjhlaw.com |

2570666.5

# TABLE OF CONTENTS

Page

IDENTITY OF PARTIES AND COUNSEL ......................................................... ii

TABLE OF CONTENTS ................................................................................iv

INDEX OF AUTHORITIES ......................................................................... vii

STATEMENT OF THE CASE ..........................................................................1

STATEMENT REGARDING ORAL ARGUMENT..................................................2

ISSUES PRESENTED ....................................................................................3

STATEMENT OF FACTS...............................................................................4

      I.     Background............................................................................4

      II.    Webb's Lawsuit Against Appellees .......................................4

      III.   Tujague and Dominion's Motion.........................................6

      IV.   Webb's Conflicting Response to the Motion ........................7

      V.    Trial Court's Hearing on the Motion....................................8

SUMMARY OF THE ARGUMENT....................................................................9

ARGUMENTS AND AUTHORITIES ...............................................................11

      I.     The Trial Court Properly Dismissed Webb's
            Lawsuit Based on the UPA's Provision Requiring
            Webb to Bring Suit in Essex County .................................11

            A.    The Trial Court Did Not Abuse its Discretion
                  Enforcing the UPA's Forum–Selection Clause ....................11

2570666.5

1.     *Standard of Review* ..............................................................11

2.     *Appellees Established the Validity of the UPA's Forum-Selection Clause* ...............................12

3.     *Webb Failed to Clearly Show the Forum-Selection Clause Should not be Enforced* .................................................14

B.     **In the Alternative, the Trial Court Properly Dismissed the Suit Based on the Parties' Agreement Selecting Venue in Another State** ......................18

    1.     *Standard of Review for Motion to Transfer Venue* ...................................................20

    2.     *The Trial Court Correctly Granted Appellees' Motion to Transfer Venue Because the UPA Constitutes a "Major Transaction" Under Texas Law* ....................23

        a.     *Webb's Venue Allegation* ....................................23

        b.     *The UPA is a "Major Transaction"* ...................24

        c.     *Venue is not Proper in Dallas County Under § 15.020(c)(1) Because Webb Agreed in Writing Not to Bring Suit in Dallas County* ....................25

        d.     *Venue is Alternatively Improper in Dallas County Under § 15.020(c)(2) Because Webb Expressly Agreed To Sue in Essex County* .......................................26

II.     **Webb Never Requested an Opportunity to Present "Rebuttal Evidence"** ...........................................29

2570666.5

**III.** **The Trial Court Did Not "Transfer" Webb's Lawsuit to New Jersey**.......................................................................31

**PRAYER** ...........................................................................................33

**CERTIFICATE OF COMPLIANCE**...........................................................36

**CERTIFICATE OF SERVICE**.................................................................37

2570666.5

# INDEX OF AUTHORITIES

**Cases**                                                                                    **Page**

*Accelerated Christian Educ., Inc. v. Oracle Corp.*,
925 S.W.2d 66 (Tex. App.—Dallas 1996, no writ)..................................................31

*Airvantage, L.L.C. v. TBAN Props. #1, L.T.D.*,
269 S.W.3d 254 (Tex. App.—Dallas 2008, no pet.) ...............................................23

*Carlile Bancshares, Inc. v. Armstrong*,
No. 02-14-00014-CV, Not Reported in
S.W.3d, 2014 WL 3891658
(Tex. App.—Fort Worth Aug. 7, 2014, no pet.)............................. 18 n. 14, 19 n. 14

*Eckland Consultants, Inc. v. Ryder, Stilwell Inc.*,
174 S.W.3d 80 (Tex. App.—Houston [1st Dist.] 2004, no pet.)................... 27 n. 20

*Garza v. State and County Mut. Fire Ins. Co.*,
No. 2-06-202-CV, Not Reported in S.W.3d, 2007 WL 1168468
(Tex. App.—Fort Worth April 19, 2007, pet. denied)........ 20, 21, 22 n. 16, 25 n. 17

*Gold's Gym Franchising LLC v. Brewer*,
400 S.W.3d 156 (Tex. App.—Dallas 2013, no pet.) ...............................................15

*H2O Solutions, Ltd. v. PM Realty Group, LP*,
438 S.W.3d 606 (Tex. App.—Houston [1st Dist.]
Feb. 13, 2014, pet. denied)......................................................................... 27 n. 20

*Hiles v. Arnie & Co., P.C.*,
402 S.W.3d 820 (Tex. App.—Houston [14th Dist.] 2013, pet. denied)....... 19 n. 14

*In re ADM Inv. Servs., Inc.*,
304 S.W.3d 371 (Tex.2010)........................................................................12

*In re AIU Ins. Co.*,
148 S.W.3d 109 (Tex. 2004)........................................................................12

2570666.5

*In re Automated Collection Techs., Inc.*,
156 S.W.3d 557 (Tex. 2004)........................................................................12

*In re AutoNation, Inc.*,
228 S.W.3d 663 (Tex. 2007)................................................................. 11-12

*In re Bunzl USA, Inc.*,
155 S.W.3d 202 (Tex. App.—El Paso 2004, orig. proceeding) .............................14

*In re Estate of Steed*,
152 S.W.3d 797 (Tex. App.—Texarkana 2004, pet. denied) ..................................20

*In re Fluor Enters., Inc.*,
No. 13-11-00260-CV, 2011 WL 2463004
(Tex. App.—Corpus Christi June 13, 2011,
orig. proceeding) ....................................................... 21 n. 15, 22, 25 n. 17

*In re Fort Bend County*,
278 S.W.3d 842 (Tex. App.—Houston [14th Dist.]
2009, orig. proceeding) ................................................................. 21 n. 15

*In re Freestone Underground Storage, Inc.*,
429 S.W.3d 110 (Tex. App.—Texarkana 2014, no pet.)............................. 19 n. 14

*In re Great Lakes Dredge & Dock Co. L.L.C.*,
251 S.W.3d 68 (Tex. App.—Corpus Christi 2008, no pet.) .......................... 18 n. 14

*In re Hubbard*,
No. 05-14-00608-CV, Not Reported in
S.W.3d, 2014 WL 4090131
(Tex. App.—Dallas Aug. 19, 2014, orig. proceeding) ..................................... 21, 22

*In re Int'l Profit Assocs.*,
274 S.W.3d 672 (Tex. 2009)........................................................................11

*In re Lisa Laser USA, Inc.*,
310 S.W.3d 880 (Tex. 2010)................................................................. 11-12, 16

*In re Medical Carbon Research Inst., L.L.C.*,
No. 14-07-00935-CV, Not Reported in
S.W.3d, 2008 WL 220366
(Tex. App.—Houston [14th Dist.] Jan. 29, 2008, orig. proceeding)............. 19 n. 14

*In re Missouri Pacific R. Co.*,
970 S.W.2d 47 (Tex.App.—Tyler 1998, orig. proceeding).......................... 25 n. 17

*In re Railroad Repair & Maint., Inc.*,
No. 05-09-01035-CV, Not Reported in
S.W.3d, 2009 WL 3531636
(Tex. App.—Dallas Nov. 2, 2009, orig. proceeding) .............................. 21 n. 15, 23

*In re Team Rocket, L.P.*,
256 S.W.3d 257 (Tex. 2008).................................................................21

*In re Weekley Homes, L.P.*,
180 S.W.3d 127 (Tex. 2005)................................................................16

*Jackson v. Neal*,
No. 13-07-00164-CV, Not Reported in
S.W.3d, 2009 WL 140507
(Tex. App.—Corpus Christi Jan. 22, 2009, no pet.)..................................... 25 n. 17

*Liu v. Cici Enterprises, LP*,
Not Reported in S.W.3d, 2007 WL 43816
(Tex. App.—Houston [14th Dist.] Jan. 9, 2007, no pet.) ............... 18 n. 14, 19 n. 14

*Marshall v. Kusch*,
84 S.W.3d 781 (Tex. App.—Dallas 2002, pet. denied)...........................................16

*My Café-CCC, Ltd. v. Lunchstop, Inc.*,
107 S.W.3d 860 (Tex. App.—Dallas 2003, no pet.) ...............................................12

*Ramsay v. Tex. Trading Co., Inc.*,
254 S.W.3d 620 (Tex. App.—Texarkana 2008, pet. denied)......... 18 n. 14, 19 n. 14

2570666.5

*Spin Doctor Golf, Inc. v. Paymentech, L.P.*,
296 S.W.3d 354 (Tex. App.—Dallas 2009, pet. denied)........................................20

*Stokes Interest, G.P. v. Santo-Pietro*,
343 S.W.3d 441 (Tex. App.—El Paso 2010, no pet.)..............................................31

*Vak v. Net Matrix Solutions, Inc.*,
442 S.W.3d 553 (Tex. App.—Houston [1st Dist.] 2014, no pet.) ................. 18 n. 14

*Young v. Valt.X Holdings, Inc.*,
336 S.W.3d 258 (Tex. App.—Austin 2010, pet. dism'd)........................................13

## Statutes

28 U.S.C. § 1391(b)(1).............................................................................. 26 n. 18
28 U.S.C. § 1391(b)(2).............................................................................. 26 n. 18
28 U.S.C. § 1391(b)(3)........................................................................ 26, 26 n. 18
N.J. Stat. Ann. Const. Art. VI, § 3, ¶ 2 (1947) .........................................................25
TEX. CIV. PRAC. & REM. CODE § 15.020(a) ...........................................................24
TEX. CIV. PRAC. & REM. CODE § 15.020(c) ...........................................................24
TEX. CIV. PRAC. & REM. CODE § 15.063(1) ...........................................................21

## Rules

N.J. R. 4:3-2(a)..........................................................................................................25
N.J. R. 4:3-2(b) .................................................................................................. 25-26
Tex. R. App. 33.1(a)(1)(A) .............................................................. 29, 30 n. 23
Tex. R. Civ. P. 87(2)(a)-(b)................................................................... 21, 22
Tex. R. Civ. P. 87(3)(a) ......................................................... 21, 22, 25 n. 17
Tex. R. Civ. P. 87(3)(c)..............................................................................................22

2570666.5

## Other Authorities

1 Arthur Linton Corbin, Corbin on Contracts § 2.10
(Joseph M. Perillo rev. 1993)) ................................................................14

Paul Yetter and Richard Ferrer,
"The Evolution of Forum-Selection Clause
Enforcement in Texas," 73 Tex. Bar J. 274, 276 (2010)............................. 19 n. 14

2570666.5

## STATEMENT OF THE CASE

Appellant Johnny E. Webb, III ("Webb"), a former member of Appellee Diversegy, LLC ("Diversegy"), sued Appellees in connection with a Unit Purchase Agreement through which Webb sold his membership interest to Appellee Shuk Holdings, LLC ("Shuk"). C.R. 156-172. Appellees Lucien J. Tujague, Jr. ("Tujague") and Dominion Gas Holdings, LP ("Dominion") filed a Motion to Transfer Venue Pursuant to TEX. CIV. PRAC. & REM. CODE § 15.020, and Subject Thereto, Alternative Motion to Dismiss Based on Forum Selection Clause (the "Motion"). C.R. 207-219. Shuk, IDT Energy, Inc. ("IDT"), and Alex Rodriguez ("Rodriguez") joined in the Motion. C.R. 250-252; 253-255.[2] On September 23, 2014, the trial court heard the Motion and signed an order granting it in its entirety. The trial court's judgment stated that "Plaintiff's lawsuit is DISMISSED WITHOUT PREJUDICE TO THE REFILING OF SAME in state or federal court in Essex County, New Jersey." Supp. C.R. 4-5.

On October 8, 2014, Webb filed a Motion for Reconsideration and to Modify, Correct or Reform Judgment Based on New Evidence and Request for Findings of Fact & Conclusions of Law. C.R. 422-438. The trial court heard and denied Webb's motion on November 12, 2014. C.R. 480. This appeal followed.

---

[2]    Shuk and IDT's joinder was subject to their previously filed special appearance.

2570666.5

## STATEMENT REGARDING ORAL ARGUMENT

Appellees believe oral argument will not significantly aid the Court's decisional process. The facts and legal arguments have been adequately presented in the briefs and record. Additionally, the dispositive issue or issues have been authoritatively decided by this and other courts of appeals. Appellees therefore believe oral argument is unnecessary. If the Court desires oral argument, however, Appellees desire to appear and participate.

2570666.5

## ISSUES PRESENTED

Issue 1:     The trial court properly granted the Motion because there was sufficient evidence to support the trial court's ruling.

Issue 2:     The trial court did not err in dismissing Webb's lawsuit without prejudice because:

    (a)     that is the appropriate remedy under the circumstances of this case; and

    (b)     Webb waived any error.

2570666.5

## STATEMENT OF FACTS

### I. Background

Webb is a former member of Diversegy. C.R. 156, ¶ 3. In December 2013, Webb, Tujague, Dominion and the majority of the other Appellees ("Defendant-Sellers") sold their membership interests in Diversegy to Shuk pursuant to a Unit Purchase Agreement ("UPA"). C.R. 157, ¶ 6; C.R. 159, ¶ 21. The UPA provides that each "Party" to the UPA, including Webb

> submits to the exclusive jurisdiction of the state or federal courts located in Essex County, New Jersey, in any action or proceeding arising out of, or relating to, this Agreement, agrees that all claims in respect of the action or proceeding may be heard and determined in any such court and agrees not to bring any action or proceeding arising out of, or relating to, this Agreement in any other court.

C.R. 57, § 10.10(b). Shuk paid a total of $2 million for the membership interests. C.R. 30, § 4.1; C.R. 160, ¶ 23.

### II. Webb's Lawsuit Against Appellees

Webb filed suit against Appellees for breach of contract, fraud, breach of fiduciary duty and conversion in connection with the UPA. In both his Original and First Amended Petitions, Webb alleged that he is "one of eleven (11) sellers identified as a managing seller in the Unit Purchase Agreement . . .." C.R. 11, ¶ 15; 159-60, ¶ 22. Webb attached an executed copy of the UPA to his Original

Petition as "Exhibit 1."[3] He also filed an affidavit verifying that the allegations and information in his lawsuit were all "true and correct to the best of my knowledge." C.R. 171.

In his factual background, Webb claimed he had not been paid for his membership interest. C.R. 161, ¶ 39. Webb also claimed the UPA provided for "waterfall" payments that require Diversegy's debts – including amounts Diversegy allegedly owed Webb – to be paid first. C.R. 160, ¶ 29. And Webb claimed that Tujague, Dominion and the other Defendant Sellers failed to disclose over $250,000 in debts owed to Webb before Shuk acquired Diversegy. C.R. 161, ¶¶ 33-34.

All of Webb's alleged causes of action relate to his position as a seller under the UPA. Webb's first cause of action, styled "fraud, misrepresentation and conversion," alleged Tujague, Dominion and the other Defendant Sellers misrepresented information and failed to disclose information they should have in the disclosure documents related to the transaction. C.R. 163, 164.[4] Webb's second cause of action – breach of contract – alleged:

---

[3] Although Webb did not attach an executed copy of the UPA to his Amended Petition, he refers to it as "Exhibit 1" and it is apparent that he intended to do so. *See e.g.* C.R. 159-160, ¶¶ 22, 24-29.

[4] Specifically, Webb alleged the sellers "misrepresented material facts concerning the debts and liabilities of Diversegy" and "withheld and purposely failed to disclose over $250,000.00 in debts owed to Plaintiff." C.R. 163, ¶¶ 54-55. Webb then alleged "[t]he concealment of this information was purposeful and malicious, designed to defraud the Plaintiff,

2570666.5

> Defendant Sellers breached the purchase agreement by refusing to compensate Plaintiff for the sale of his ownership shares. Further, Defendant Sellers breached the 'waterfall' provisions contemplated by the purchase agreement by failing to designate debts, designate and identify the bank account receiving the purchase monies, and by failing to pay all debts (including Plaintiff) before paying themselves.

C.R. 165, ¶ 66. Webb's last cause of action – breach of fiduciary duty – asserted Tujague, Dominion and the other Defendant-Sellers 'had an obligation of loyalty to the joint concern and of the utmost good faith, fairness and honesty in their dealings *with the Plaintiff as a fellow seller*, member, and partner," and that they "breached their fiduciary duties of care and loyalty by committing the acts described herein." C.R. 165, ¶ 70 (emphasis added); C.R. 165, ¶ 69.

## III.    Tujague and Dominion's Motion

On August 29, 2014, Webb obtained an *ex parte* hearing on his application for temporary restraining order, and the trial court set a hearing on Webb's application for temporary injunction for September 12, 2014. C.R. 153-154. After learning of Webb's lawsuit, Tujague and Dominion filed the Motion and asserted that Webb's lawsuit must be brought in Essex County, New Jersey because Webb's claims arose out of, or related to, the UPA, and Webb was bound by the

---

other sellers, and other debtors of monies owed to them and should have been covered in the disclosure schedule and waterfall documents. (Ex. 1, 6A.6, 6B.9)." C.R. 164, ¶ 57. Finally, Webb alleged "Plaintiff has not received one dollar from the sale of Diversegy nor has his debt been identified as required by the Unit Purchase Agreement. Consequently, monies owed to him for his shares have also been converted by Defendant Sellers." C.R. 164, ¶ 59.

2570666.5

UPA's Section 10.10(b). C.R. 207-219.[5] The following day, Tujague and Dominion requested an emergency hearing on the Motion, arguing it should be heard on September 12 before the hearing on Webb's application. C.R. 223-229.

At the September 12 hearing, the trial court extended the temporary restraining order for fourteen days and granted Tujague and Dominion's request for an emergency hearing. R.R. Vol. 2, 36:6-21.[6] The Motion, along with Shuk and IDT's special appearance, were scheduled for hearing on September 23. R.R. Vol. 3, 1:12.[7]

## IV. Webb's Conflicting Response to the Motion

The day before the hearing – September 22 – Webb filed a response to the Motion. C.R. 271-275. Webb did not attach any evidence in support of his response. Instead – after filing suit on the UPA – Webb baldly asserted that "there is no valid written agreement" between him and Appellees, and that he "did not authorize or agree to the contract and it is therefore not enforceable against Plaintiff." C.R. 271-272. These unsupported arguments contradicted the very

---

[5] Tujague and Dominion expressly adopted and incorporated into the Motion the copy of the UPA attached to Webb's Original Petition, and alternatively asked the trial court to take judicial notice. C.R. 208 at fn. 2.

[6] Shuk and IDT's counsel requested the trial court consider their special appearances at the September 12 hearing. R.R. Vol. 2, 4:10-17.

[7] Shuk and IDT filed a joinder to the Motion, subject to their special appearances, on September 19, 2014. C.R. 250-252. Rodriguez also filed a joinder to the Motion on September 19, 2014. C.R. 253-255.

2570666.5

premise of Webb's lawsuit, which sought the benefit of the bargain under the UPA.

Tujague and Dominion quickly prepared and filed a reply brief, attaching affidavits of three witnesses who averred they saw Webb sign the UPA.  C.R. 362-371.[8]

## V.    The Trial Court's Hearing on the Motion

At the September 23 hearing[9], the Court questioned Webb's counsel about the lack of evidence to support his assertion that Webb did not sign the copy of the UPA attached to his lawsuit:

> THE COURT:    Well, I guess one of the things that I'm concerned about – and we're somewhat fixed because of Texas procedure here – is that why don't I have a – other than the verified petition, why don't I have on file at this time an affidavit saying I did not sign the UPA?  Why don't I have it?
>
> MR. O'NEAL:    I – I have no – I didn't think it was necessary, Your Honor.  I mean, I'll take the hit on that.

R.R. Vol. 3, 28:9-17.  The trial court signed an order dismissing Webb's lawsuit without prejudice to his right to refile in state or federal court in Essex County, New Jersey.  Supp. C.R. 4-5.

---

[8]    Shuk and IDT joined in Tujague and Dominion's reply brief, again subject to their special appearances.  C.R. 286-288.  Rodriguez filed an affidavit in reply to Webb's response. C.R. 299-347.

[9]    Shuk and IDT's counsel requested the trial court hear the special appearances first at the September 23 hearing, but the trial court wanted to proceed with hearing the Motion.  R.R. Vol. 3, 6:16-7:24.  At the time that the Motion was heard, Diversegy had not yet been required to appear in the lawsuit.

Webb then filed a motion for reconsideration and request for findings of fact & conclusions of law. C.R. 422-438. The trial court heard and denied Webb's motion on November 12, 2014. C.R. 480.

<u>SUMMARY OF THE ARGUMENT</u>

The trial court properly dismissed Webb's lawsuit without prejudice to refiling in Essex County, New Jersey. The UPA requires all claims arising out of, or relating to, the UPA to be brought in Essex County. Appellees met their burden of proving a valid, enforceable forum-selection clause, and Webb failed to clearly establish that the clause should not be enforced.

Alternatively, Appellees established prima facie proof that the "major transaction" mandatory venue provision, TEX. CIV. PRAC. & REM. CODE § 15.020, applied to Webb's claims, and under the provision Webb's lawsuit is only proper in Essex County.

Webb's second complaint – that the trial court should have given Webb an opportunity to respond to Appellees' reply brief – is also without merit. Webb never requested the opportunity to respond. Webb also could have attached the evidence he wanted the trial court to consider to his response to the Motion. He has made no representation that—much less an explanation why—he could not have filed along with his response the evidence he now complains the trial court supposedly did not allow him to present. Furthermore, Webb could have requested

-9-

2570666.5

a continuance of the September 23 hearing to allow him an opportunity to file any rebuttal evidence. He did not do so.

Webb's final complaint – that the trial court erred by transferring Webb's lawsuit to New Jersey – is fundamentally flawed. The trial court did not "transfer" Webb's lawsuit to New Jersey. It dismissed Webb's lawsuit without prejudice to Webb's right to refile in New Jersey in accordance with the UPA. In fact, as discussed *supra*, Webb's counsel invited the trial court to dismiss the lawsuit without prejudice.

Webb's pleadings, his response to the Motion, his motion for reconsideration, and now his brief before this Court, contain no explanation of how he can use the UPA as a sword and a shield. Webb does not explain how he can sue as a party to the UPA, based on representations that were made in the UPA or that he claims should have been made in the UPA, seek benefit-of-the-bargain damages based on the UPA, and yet avoid the provision in the UPA requiring his claims be filed in Essex County. Given the pleadings, the evidence, and the arguments made below, the trial court properly granted Appellees' Motion and dismissed the case without prejudice to it being refiled in Essex County.

2570666.5

I.    **The Trial Court Properly Dismissed Webb's Lawsuit Based on the UPA's Provision Requiring Webb to Bring Suit in Essex County**

Webb does not dispute that his claims arise under or relate to the UPA. He also does not dispute that the UPA provides that any lawsuit arising under or relating to the UPA must be brought in "state or federal courts located in Essex County, New Jersey." He simply maintains that he did not "authorize or agree to the [UPA]," even though he seeks the benefit of the bargain thereunder. Ant.'s Br. at 20. Thus, according to Webb, the trial court "abused its discretion by issuing a judgment that relies on a forum-selection clause." Ant.'s Br. at 18. Webb's far-fetched argument is unsupportable.

A.    **The Trial Court Did Not Abuse its Discretion Enforcing The UPA's Forum-Selection Clause**

*1.    Standard of Review*

"Forum-selection clauses are generally enforceable, and a party attempting to show that such a clause should not be enforced bears a heavy burden." *In re Int'l Profit Assocs.*, 274 S.W.3d 672, 675 (Tex. 2009). "In general, forum-selection clauses should be given full effect, and subjecting a party to trial in a forum other than the contractually chosen one amounts to 'clear harassment . . . injecting inefficiency by enabling forum-shopping, wasting judicial resources, delaying adjudication on the merits, and skewing settlement dynamics . . .'" *In re*

2570666.5

*Lisa Laser USA, Inc.*, 310 S.W.3d 880, 883 (Tex. 2010) (quoting *In re AutoNation, Inc.*, 228 S.W.3d 663, 667-68 (Tex. 2007)). "[E]nforcement of forum-selection clauses is mandatory unless the party opposing enforcement 'clearly shows that enforcement would be unreasonable and unjust, or that the clause was invalid for such reasons as fraud or overreaching.'" *In re Automated Collection Techs., Inc.*, 156 S.W.3d 557, 559 (Tex. 2004) (quoting *In re AIU Ins. Co.*, 148 S.W.3d 109, 112 (Tex. 2004)).

A trial court's decision concerning the enforcement of a forum-selection clause is reviewed under an abuse of discretion standard. *See In re ADM Inv. Servs., Inc.*, 304 S.W.3d 371, 375 (Tex.2010); *My Café-CCC, Ltd. v. Lunchstop, Inc.*, 107 S.W.3d 860, 864 (Tex. App.—Dallas 2003, no pet.).

### 2. *Appellees Established the Validity of the UPA's Forum-Selection Clause*

The UPA contained the following forum-selection clause:

Each of the Parties submits to the exclusive jurisdiction of the state or federal courts located in Essex County, New Jersey, in any action or proceeding arising out of, or relating to, this Agreement, agrees that all claims in respect of the action or proceeding may be heard and determined in any such court and agrees not to bring any action or proceeding arising out of, or relating to, this Agreement in any other court. Each of the Parties waives any defense of inconvenient forum to the maintenance of any action or proceeding so brought and waives any bond, surety or other security that might be required of any other Party with respect thereto.

2570666.5

C.R. 57, § 10.10(b). The UPA defines "Parties" as "the Company, Purchaser and the Sellers" collectively. C.R. 21. The term "Sellers" is defined as the "Persons listed on Schedule A" to the UPA. *Id.* Webb is listed on Schedule A. C.R. 64. Thus, Webb is a "Party" to the UPA and his lawsuit is subject to the forum-selection clause.[10]

Webb's response to the Motion effectively argued Appellees "fail[ed] to meet the initial burden of establishing that [Webb] entered in an agreement with Appellees" because Webb "did not agree to be bound to the purchase agreement." Ant.'s Br. at 20; *see also* C.R. 272. Webb did not attach any evidence to his response. C.R. 271-275. Webb's argument belies the evidence before the trial court.

A party seeking to enforce a contractual forum-selection provision has the initial burden of establishing the prima facie validity of an agreement to an exclusive forum and that the agreement applies to the claims involved. *Young v. Valt.X Holdings, Inc.*, 336 S.W.3d 258, 262 (Tex. App.—Austin 2010, pet. dism'd). Webb established Appellees' burden for them. He attached a fully-executed copy of the UPA to his lawsuit. C.R. 18-65. He alleged that he "*is one of the* founders and *sellers of Diversegy, LLC*, the company sold in the sales

---

[10]     Webb did not dispute that his claims arise out of, or relate to, the UPA, and therefore are within the scope of the UPA's forum-selection clause.

-13-

transaction at issue in this matter." C.R. 156, ¶ 3 (emphasis added). Webb also alleged that as a "seller" of his membership interest in Diversegy, he was entitled to share in certain payments from Shuk under the UPA. For example, Webb alleged, "the purchase agreement provides that in addition to the purchase monies described above, the sellers which also include Plaintiff, are to receive 'contingency payments' based on monthly revenue, after the closing, on existing and renewed accounts." C.R. 160, ¶ 25. Webb verified these allegations were "true and correct to the best of my knowledge." C.R. 171.

Appellees also provided affidavits from three witnesses who averred they saw Webb sign the UPA in their presence, and that the copy of the UPA attached to Webb's lawsuit was a true and correct copy. C.R. 362-371. A party's signature on a written contract is "strong evidence" that the party unconditionally assented to its terms. *In re Bunzl USA, Inc.*, 155 S.W.3d 202, 209 (Tex. App.—El Paso 2004, orig. proceeding) (citing 1 Arthur Linton Corbin, Corbin on Contracts § 2.10 at 168 (Joseph M. Perillo rev. 1993)). This evidence sufficiently established the prima facie validity of the UPA's forum-selection clause.

### 3. *Webb Failed to Clearly Show the Forum-Selection Clause Should not be Enforced*

Webb's response to the Motion *failed to attach any evidence* that he did not sign the UPA. Similarly, at the September 23 hearing Webb did not attempt to present any evidence that he did not sign the UPA. Instead, Webb's counsel

-14-

claimed at the hearing that the Webb's Amended Petition was a "verified statement of Mr. Webb claiming its [sic] fraudulent." R.R. Vol. 3, 14:21-24. But Webb's Amended Petition does not claim that the signature appearing on his signature line in the UPA was not his. Because Webb failed to "clearly show" the UPA's Section 10.10(b) should not be enforced, the trial court did not abuse its discretion by dismissing the lawsuit without prejudice.

Moreover, Webb's position in response to the Motion fundamentally contradicts the allegations in his lawsuit and the relief sought. Webb sued Appellees for breach of contract, arguing he was not paid for the sale of his membership interest in Diversegy. C.R. 165, ¶ 66. He alleged – in his Original Petition and his First Amended Petition – that he was a seller under the UPA. C.R. 11, ¶ 15; C.R. 159-60, ¶22. He unequivocally asked the trial court to award him the benefit of the bargain under the UPA – payment for his shares. C.R. 160-161, ¶¶ 30; C.R. 161, ¶ 39; C.R. 164, ¶ 59; C.R. 165, ¶ 66. In fact, Webb prayed the trial court permanently enjoin Appellees from "refusing payment of the purchase price for Plaintiff's ownership interest." C.R. 169.

Foundationally, Webb's breach of contract cause of action requires that he prove a valid, enforceable contract exists between Webb and Appellees. *Gold's Gym Franchising LLC v. Brewer*, 400 S.W.3d 156, 162 (Tex. App.—Dallas 2013, no pet.). Webb cannot claim Appellees owe him obligations under the UPA and

simultaneously assert that the UPA's forum-selection clause does not apply to those claims. *In re Lisa Laser USA, Inc.*, 310 S.W.3d 880, 886 (Tex. 2010) ("HealthTronics cannot claim that Lisa Germany has obligations to HealthTronics under the Distribution Agreement and simultaneously claim that the forum-selection clause does not apply to those claims"); *In re Weekley Homes, L.P.*, 180 S.W.3d 127, 135 (Tex. 2005) (a plaintiff "cannot both have his contract and defeat it too.").

Webb's other claims arise out of the same set of alleged facts and presume Webb's status as a party to the UPA. First, his fraud claim alleges Defendant-Sellers materially misrepresented Diversegy's debts in the UPA to him as a party to the UPA. C.R. 163-164, ¶¶ 55-57. If Webb is now taking the position that he is not a party to the UPA and that he did not sign or authorize the signing of the UPA, then no fraud claim could exist. By not signing the UPA, no representations were made to Webb, and Webb certainly did not act in reliance on the representations contained in the UPA. *See Marshall v. Kusch*, 84 S.W.3d 781, 785 (Tex. App.—Dallas 2002, pet. denied) (reversing trial court's judgment for plaintiff on fraud claim where there was no evidence that alleged misrepresentation was communicated to plaintiff).[11]

---

[11] In his affidavit filed with his motion for reconsideration, Webb averred, "The UPA was never presented to me in any form. The terms of the UPA were never disclosed to me." C.R. 432, ¶ 7. Webb's testimony runs counter to his lawsuit allegations of representations made to

-16-

Webb also alleged the Defendant-Sellers "owed Plaintiff the duty to make full disclosure, and the duty to exercise a high degree of care to conserve company money and pay it only to those persons entitled to receive it." C.R. 165, ¶ 71. This claim also hinges on Webb's contention that he was a party to the UPA, and thus entitled to receive payment for his shares.[12] And finally, Webb alleges "monies owed to him for his shares have also been converted by Defendant Sellers." C.R. 164, ¶ 59. This allegation implies that Webb sold his shares and is entitled to proceeds from their sale under the UPA. But if Webb was not a party to the UPA, as he contended in his response to Appellees' Motion, he did not sell his shares and still owns them.

The bottom line is that Webb cannot have it both ways. He cannot seek his alleged benefit-of-the-bargain based on the UPA, and at the same time disclaim he is a party to the UPA. When it is clear from Webb's pleadings that he seeks a judgment awarding him damages he claims he is owed under the UPA, the trial court properly refused Webb's attempt to avoid the UPA's requirement that Webb bring his actions in Essex County. In other words, the trial court did not abuse its

---

him. Those allegations were also verified. C.R. 171. These conflicting statements cannot all be correct.

[12] Webb did not allege that he was a third-party beneficiary to the UPA. Further, the UPA expressly provided that it did not grant or confer any right to any third party. C.R. 55, § 10.5.

discretion in granting the Motion on the basis of a valid, enforceable forum-selection clause.[13]

## B. In the Alternative, the Trial Court Properly Dismissed the Suit Based on the Parties' Agreement Selecting Venue in Another State

Appellees' Motion alternatively sought to transfer venue if the UPA's Section 10.10(b) was considered as a venue-selection clause, as opposed to a forum-selection clause.[14] The trial court dismissed Webb's case without prejudice

---

[13] Webb did not allege or clearly show that any of the other enumerated exceptions applied barring mandatory enforcement of the UPA's forum-selection clause. In fact, Webb acknowledged in his brief that the fraud or overreaching exception "must involve negotiation of the forum-selection clause itself," and admits that he did not allege that he was fraudulently induced to sign the UPA. Ant.'s Br. at 21.

[14] *See* C.R. 209 n. 5. Case law is not uniform on when a clause is forum-selection or venue-selection. This Court noted in *Ramsay v. Tex. Trading Co., Inc.* that "'a "forum"-selection agreement is one that chooses another state or sovereign as the location for trial, whereas a "venue"-selection agreement chooses a particular county or court within that state or sovereign.'" 254 S.W.3d 620, 627 (Tex. App.—Texarkana 2008, pet. denied) (quoting *In re Great Lakes Dredge & Dock Co. L.L.C.*, 251 S.W.3d 68, 73 (Tex. App.—Corpus Christi 2008, no pet.))); *see also Carlile Bancshares, Inc. v. Armstrong*, No. 02-14-00014-CV, Not Reported in S.W.3d, 2014 WL 3891658, at *6 (Tex. App.—Fort Worth Aug. 7, 2014, no pet.) ("A forum-selection clause is a contractual provision that selects the adjudicative body in which jurisdiction is properly invoked, while a venue-selection clause selects the geographic place of trial."). In *Armstrong*, the court held that an agreement providing "VENUE FOR ANY CAUSE OF ACTION ARISING FROM THIS AGREEMENT WILL LIE IN TARRANT COUNTY, TEXAS" was a forum-selection clause. *Id.* In *Vak v. Net Matrix Solutions, Inc.*, the court held that "clauses providing for exclusive venue in a particular locale are treated as forum-selection clauses." 442 S.W.3d 553, 560 (Tex. App.—Houston [1st Dist.] 2014, no pet.). The *Vak* Court held the parties' agreement for "exclusive venue for all litigation . . . shall be in the courts of Harris County, Texas" was a forum-selection clause because it "unambiguously selects a particular venue and makes it exclusive." *Id.*

Other courts reach the opposite conclusion. In *Liu v. Cici Enterprises, LP*, the court held an agreement providing "that venue for any proceeding relating to or arising out of this agreement shall be Dallas County, Texas" was a venue-selection clause. No. 14-05-00827-CV, Not Reported in S.W.3d, 2007 WL 43816, at *3 (Tex. App.—Houston [14th Dist.] Jan. 9, 2007,

-18-

no pet.); *see also In re Medical Carbon Research Inst., L.L.C.*, No. 14-07-00935-CV, Not Reported in S.W.3d, 2008 WL 220366, at *1 (Tex. App.—Houston [14th Dist.] Jan. 29, 2008) (orig. proceeding) (provision stating that "any Claims shall be decided exclusively by and in the state or federal courts sitting in Travis County, Texas" was a venue-selection clause). Indeed, this Court stated in *Ramsay* that although the terms "have distinct legal meanings in certain contexts . . . those niceties have not been consistently observed in the reported cases." *Ramsay*, 254 S.W.3d at 627 n. 5.

The UPA's Section 10.10(b) should be characterized as a forum-selection clause for two reasons. First, the parties agreed "to the **exclusive** jurisdiction of the state or federal courts located in Essex County, New Jersey . . . and agree[d] not to bring any action or proceeding arising out of, or relating to, this Agreement in any other court." C.R. 57, § 10.10(b) (emphasis added). Thus, under *Vak* it is a forum-selection clause. *See also Armstrong*, 2014 WL 3891658, at *6. Second, Section 10.10(b) is a forum-selection clause because it selects another jurisdiction, not a different county in Texas. This dichotomy has been suggested by at least one commentator:

> To this day, some Texas courts of appeals decisions continue to rely on the somewhat awkward distinction between contractual agreements selecting an in-state locale, which Texas courts continue to refuse to enforce, and those that select an out-of-state locale, which are widely enforced. In drawing a distinction between these types of agreements, some recent court of appeals decisions have labeled clauses selecting in-state locales "venue-selection clause[s]."

Paul Yetter and Richard Ferrer, "The Evolution of Forum-Selection Clause Enforcement in Texas," 73 Tex. Bar J. 274, 276 (2010). Both *Liu* and *Medical Carbon Research* involved defendants seeking to dismiss the case in one Texas county because the agreements attached venue in another Texas county. In fact, the *Liu* Court noted it was not "presented with a contract specifying a venue in a foreign nation or state. Such cases raise questions not presented here, such as whether the selection of a foreign venue necessarily implies the selection of a particular forum." 2007 WL 43816, at *2 n.2. The *Ramsay* Court alluded to this distinction when it noted that venue-selection cases "are in the context of state venue provisions that set out which court (county) within this state has authority to hear a particular case, with agreements setting venue in an improper location." *Ramsay*, 254 S.W.3d at 627; *see also id.* at n. 4 ("We also recognize that a case from this Court, *Busse v. Pacific Cattle Feeding Fund #1, Ltd.*, 896 S.W.2d 807, 812-13 (Tex. App.—Texarkana 1995, pet. denied), reviewed a forum-selection clause stating that venue would lie in one of selected Iowa counties.").

Moreover, although some courts of appeals state that venue-selection clauses are generally unenforceable unless the contract is a "major transaction" under TEX. CIV. PRAC. & REM. CODE § 15.020, *Hiles v. Arnie & Co., P.C.*, 402 S.W.3d 820, 828 (Tex. App.—Houston [14th Dist.] 2013, pet. denied), this Court in *In re Freestone Underground Storage, Inc.*, noted that "venue selection clauses are mandatory absent a showing that enforcement would be unreasonable or unjust or a showing that the clause was invalid due to fraud or overreaching." 429 S.W.3d 110, 112 n. 3 (Tex. App.—Texarkana 2014, no pet.). Thus, if the UPA contains a

to it be refiled in Essex County. Thus, the trial court determined the facts supporting Appellees' Motion presented an issue of forum selection. Appellees agree, but in the alternative contend the trial court properly dismissed the case based on the terms of the UPA as a venue-selection clause.

### 1.      *Standard of Review for Motion to Transfer Venue*

"In reviewing a venue decision, the appellate court must conduct an independent review of the entire record . . . to determine whether any probative evidence supports the trial judge's venue decision." *Spin Doctor Golf, Inc. v. Paymentech, L.P.*, 296 S.W.3d 354, 357 (Tex. App.—Dallas 2009, pet. denied). The appellate court reviews the evidentiary record in the light most favorable to the venue ruling. *Garza v. State and County Mut. Fire Ins. Co.*, No. 2-06-202-CV, Not Reported in S.W.3d, 2007 WL 1168468, at *3 (Tex. App.—Fort Worth April 19, 2007, pet. denied). "If there is any probative evidence in the entire record that venue was proper, [the court of appeals] must uphold the trial judge's ruling." *Id.*; *Spin Doctor Golf, Inc.*, 296 S.W.3d at 357. This is true even if the preponderance of the evidence is to the contrary. *In re Estate of Steed*, 152 S.W.3d 797, 804 (Tex. App.—Texarkana 2004, pet. denied).

---

venue-selection clause, the trial court's judgment should be affirmed under *Freestone* for the same reasons discussed in Section I.A, *supra*.

Alternatively, as set forth in Section I.B, the UPA is a "major transaction" under Tex. Civ. Prac. & Rem. Code § 15.020, and dismissal was proper based on Section 10.10(b)'s venue-selection clause.

2570666.5

The plaintiff is given the first choice regarding venue by filing the lawsuit. *In re Team Rocket, L.P.*, 256 S.W.3d 257, 259 (Tex. 2008). The defendant may challenge the venue selection, "and a court must 'transfer an action to another county of proper venue if . . . the county in which the action is pending is not a proper county.'" *Id.* (quoting TEX. CIV. PRAC. & REM. CODE § 15.063(1)).

All venue facts, when properly pleaded, shall be taken as true unless specifically denied by the adverse party. Tex. R. Civ. P. 87(3)(a). If the defendant objects to the plaintiff's choice of venue through a motion to transfer venue, the question of proper venue is raised. *Garza*, 2007 WL 1168468, at *2. A motion to transfer venue must show either (a) the county where the action is pending is not a proper county; or (b) mandatory venue of the action is prescribed in another county. *In re Hubbard*, No. 05-14-00608-CV, Not Reported in S.W.3d, 2014 WL 4090131, at *1 (Tex. App.—Dallas Aug. 19, 2014, orig. proceeding).

Once the defendant specifically denies the plaintiff's pleaded venue facts,[15] the burden is on the plaintiff to prove that venue is maintainable in the county of suit. *Garza*, 2007 WL 1168468, at *2; Tex. R. Civ. P. 87(2)(a)-(b). The plaintiff

---

[15] Appellees were not required to specifically deny the general venue facts in Webb's Amended Petition because Appellees asserted that Webb's lawsuit was subject to a mandatory venue provision. *In re Fluor Enters., Inc.*, No. 13-11-00260-CV, 2011 WL 2463004, at *4 n. 2 (Tex. App.—Corpus Christi June 13, 2011, orig. proceeding); *In re Fort Bend County*, 278 S.W.3d 842, 845 (Tex. App.—Houston [14th Dist.] 2009, orig. proceeding); *In re Railroad Repair & Maint., Inc.*, No. 05-09-01035-CV, Not Reported in S.W.3d, 2009 WL 3531636, at *5-6 (Tex. App.—Dallas Nov. 2, 2009, orig. proceeding).

2570666.5

must make prima facie proof that venue is proper in the county where the plaintiff initiated the lawsuit in order to meet this burden. *Id.*; Tex. R. Civ. P. 87(3)(a). Prima facie proof is made when the venue facts are properly pleaded and an affidavit and any duly proved attachments to the affidavit fully and specifically setting forth the facts supporting such pleading are filed. *Id.*

If the plaintiff meets this burden, the defendant must plead venue facts that plaintiff's lawsuit is subject to a mandatory venue provision. Tex. R. Civ. P. 87(2)(a), 87(3)(a), 87(3)(c); *In re Fluor Enters., Inc.*, 2011 WL 2463004, at *3. The trial court must assume all properly pleaded venue facts are true unless specifically denied by the plaintiff. Tex. R. Civ. P. 87(3)(a); *In re Fluor Enters., Inc.*, 2011 WL 2463004, at *4 (defendant's mandatory venue facts were taken as true where plaintiff did not specifically deny them).[16] If a venue fact is specifically denied, the defendant must make prima facie proof of the venue fact. Tex. R. Civ. P. 87(3)(a). If the defendant makes its prima facie proof, the action must be transferred. *In re Hubbard*, 2014 WL 4090131, at *1.

---

[16] *See also Garza*, 2007 WL 1168468, at *3 ("But if a defendant properly challenges venue and asserts venue facts, and the plaintiff never specifically denies those venue facts, they are taken as true.").

2570666.5

### 2. The Trial Court Correctly Granted Appellees' Motion to Transfer Venue Because the UPA Constitutes a "Major Transaction" Under Texas Law

The UPA constitutes a "major transaction" under TEX. CIV. PRAC. & REM. CODE § 15.020. Webb agreed that any lawsuit arising out of or relating to the UPA must be brought in Essex County, New Jersey, and shall not be brought in any other county. Thus, even if the Court determines Section 10.10(b) is a venue-selection clause, the trial court did not err in granting Appellees' motion to transfer venue because venue is improper in Dallas County under §§15.020(c)(1) or (c)(2).

### a. Webb's Venue Allegation

Webb alleged venue was proper in Dallas County "because the actions complained of herein all occurred in Dallas County." C.R. 156, ¶ 2. Although Webb did not specifically cite the governing venue statute, it is apparent from his factual allegation that he asserted venue was proper under TEX. CIV. PRAC. & REM. CODE § 15.002(a)(1), a general venue statute. "It is clear that 'mandatory venue provisions trump permissive ones,'" and thus Webb's venue choice under TEX. CIV. PRAC. & REM. CODE § 15.002, a permissive venue statute, must yield to the mandatory provision in Section 15.020 if venue is proper thereunder. *In re Railroad Repair & Maint., Inc.*, 2009 WL 3531636, at \*4 (quoting *Airvantage, L.L.C. v. TBAN Props. #1, L.T.D.*, 269 S.W.3d 254, 257 (Tex. App.—Dallas 2008, no pet.)).

-23-

## b. *The UPA is a "Major Transaction"*

Texas Civil Practice and Remedies Code § 15.020(c) states:

Notwithstanding any other provision of this title, an action arising from a major transaction may not be brought in a county if:

(1)     the party bringing the action has agreed in writing that an action arising from the transaction may not be brought in that county, and the action may be brought in another county of this state or in another jurisdiction; or

(2)     the party bringing the action has agreed in writing that an action arising from the transaction must be brought in another county of this state or in another jurisdiction, and the action may be brought in that other county, under this section or otherwise, or in that other jurisdiction.

A "major transaction" is a "transaction evidenced by a written agreement under which a person pays, or receives, or is obligated to pay or entitled to receive, consideration with an aggregate stated value equal to or greater than $1 million." TEX. CIV. PRAC. & REM. CODE § 15.020(a).  As Webb alleged, and as reflected in the UPA – a written agreement to which Webb is a signing party – Shuk was obligated to pay at least $2 million for the purchase of the membership interests in Diversegy.  C.R. 160, ¶ 23; C.R. 30, § 4.1.  Thus, the UPA constitutes a "major transaction" for purposes of Section 15.020(a).

2570666.5

### c. *Venue is not Proper in Dallas County Under § 15.020(c)(1) Because Webb Agreed in Writing Not to Bring Suit in Dallas County*

The UPA's express language meets the requirements of TEX. CIV. PRAC. & REM. CODE § 15.020(c)(1). Section 10.10(b) states that each "Party" to the UPA "agrees not to bring any action or proceeding arising out of, or relating to, this Agreement in any other court" except state or federal court in Essex County, New Jersey. C.R. 57.

Webb's claims may also be brought in state or federal court in Essex County under their respective general venue statutes.[17] Webb alleged that IDT Energy, Inc. and Shuk Holdings, LLC, have their principal offices in Newark, New Jersey. C.R. 158, ¶¶ 10-11. Newark is located in Essex County. Venue would lie in Essex County if Webb filed in state court pursuant to New Jersey Rules of Court ("N.J. R.") 4:3-2. The Superior Court of New Jersey is a court of general jurisdiction in all causes. N.J. Stat. Ann. Const. Art. VI, § 3, ¶ 2 (1947). Venue for civil actions in the Superior Court generally lie in the county in which the cause of action arose, "or in which any party to the action resides at the time of its commencement." N.J. R. 4:3-2(a). For purposes of New Jersey's venue statute, "a corporation shall be

---

[17] Webb did not dispute at the trial court that his lawsuit may be brought in state or federal court in Essex County. Because Webb does not deny these venue facts, the Court must consider them true. Tex. R. Civ. P. 87(3)(a); *In re Fluor Enters., Inc.*, 2011 WL 2463004, at *4; *Jackson v. Neal*, No. 13-07-00164-CV, Not Reported in S.W.3d, 2009 WL 140507, at *4 (Tex. App.—Corpus Christi Jan. 22, 2009, no pet.); *Garza*, 2007 WL 1168468, at *5; *In re Missouri Pacific R. Co.*, 970 S.W.2d 47, 53 (Tex. App.—Tyler 1998, orig. proceeding).

-25-

deemed to reside in the county in which its registered office is located or in any county in which it is actually doing business." *Id.*, 4:3-2(b). Because IDT and Shuk maintain their principal offices in Newark, as Webb alleges, venue lies in New Jersey Superior Court for Essex County. C.R. 158, ¶¶ 10-11.

Venue also lies in federal court action pursuant to either 28 U.S.C. § 1391(b)(3) because IDT and Shuk are subject to personal jurisdiction in the federal courts because they maintain their principal places of business in Newark, New Jersey.[18] The United States District Court for the District of New Jersey maintains a courthouse in Newark.[19]

### d. *Venue is Alternatively Improper in Dallas County Under § 15.020(c)(2) Because Webb Expressly Agreed to Sue in Essex County*

The UPA likewise comports with TEX. CIV. PRAC. & REM. CODE § 15.020(c)(2) because it expressly states that Webb must bring his lawsuit in Essex County. Section 10.10(b) provided that each Party "submits to the exclusive jurisdiction of the state or federal courts located in Essex County, New Jersey, in

---

[18]     Venue would not be proper under 28 U.S.C. § 1391(b)(1) because not all of the Defendants in this case are residents of New Jersey. Furthermore, there was no evidence presented at the trial court that a substantial part of the events or omissions giving rise to Webb's claims occurred in Essex County. 28 U.S.C. § 1391(b)(2). Thus, venue would be proper under 28 U.S.C. § 1391(b)(3). Appellees acknowledge, however, that federal subject matter jurisdiction would be lacking if Webb refiled his lawsuit in the United States District Court for the District of New Jersey without modifying the parties or his alleged causes of action. If Webb did modify either, it is possible that federal subject matter jurisdiction may exist.

[19]     http://www.njd.uscourts.gov/court-info/court-locations/newark

-26-

any action or proceeding arising out of, or relating to, this Agreement, [and] agrees that all claims in respect of the action or proceeding may be heard and determined in any such court." As set forth *supra*, Webb may bring his lawsuit in Essex County.

Thus, the only issue is whether Webb agreed in writing to Section 10.10(b). Assuming that Webb properly specifically denied this venue fact – which Appellees dispute[20] – Appellees presented the trial court with prima facie proof that Webb signed the UPA in the presence of Tujague and the majority of the other Defendant-Sellers. C.R. 363, ¶ 4; C.R. 368, ¶ 3; C.R. 371, ¶ 4. The trial court expressed its concerns with the lack of evidence to support Webb's bald assertion that he did not sign the UPA:

> THE COURT: . . . You said there's no evidentiary response to that proof. And to me, that is more significant than what you've just told me. I mean, is that the case?

> *****

---

[20] Appellees asserted at the trial court that Webb could not specifically deny the UPA applies to him. Webb's repeated self-characterizations as a "seller," "co-seller," and "fellow seller," combined with his allegation that his membership interest in Diversegy was sold and that he has not received payment for the sale of his interest, constitute judicial admissions that bar Webb from taking the position that he did not sign the UPA. *H2O Solutions, Ltd. v. PM Realty Group, LP*, 438 S.W.3d 606, 617 (Tex. App.—Houston [1st Dist.] Feb. 13, 2014, pet. denied). The doctrine of quasi-estoppel precludes Webb from now asserting that he did not sign the UPA, because it would be unconscionable to allow Webb to take a position inconsistent to the one he already acquiesced – namely, that Webb is a "seller" under the UPA and asserts a breach of contract claim seeking payment for his membership interest. *Eckland Consultants, Inc. v. Ryder, Stilwell Inc.*, 174 S.W.3d 80, 87 (Tex. App.—Houston [1st Dist.] 2004, no pet.).

2570666.5

THE COURT: Well, I guess one of the things that I'm concerned about – and we're somewhat fixed because of Texas procedure here – is that why don't I have a – other than the verified petition, why don't I have on file at this time an affidavit saying I did not sign the UPA? Why don't I have it?

R.R. Vol. 3, 13:16-19, 28:9-14. In fact, the trial court expressed its concerns over Webb's inconsistent positions during the hearing on his motion for reconsideration:

MR. MOSELEY: . . . I'm still trying to figure out how you have a breach of contract claim on a contract that you didn't sign.

THE COURT: Well, that is problematic . . .

***** 

THE COURT: Well, what -- signature aside --

MR. O'NEAL: And I'll --

THE COURT: -- because Mr. Moseley just pointed out something that was troubling to me, not necessarily because I personally agree with it because I disagree with some of the Supreme Court authority that talks about it, but how -- how can you, in fact, rely upon a claim of breach of contract that you claim you didn't sign?

R.R. Vol. 4, 21:9-12, 21:23-22:7. Reviewing the entire record and evidence in the light most favorable to the trial court's venue ruling, there is probative evidence to support the trial court's grant of the Motion based on §§ 15.020(c)(1) and (c)(2). It is apparent that the trial court, in denying Webb's motion for reconsideration,

-28-

considered the entire record – which included Webb's pleadings. The trial court's ruling should be affirmed.

## II. Webb Never Requested an Opportunity to Present "Rebuttal Evidence"

Webb contends the trial court erred by relying on the evidence attached to Appellees' reply brief without giving him "an equal opportunity to respond." Ant.'s Br. at 25. This argument fails for several reasons.[21]

First, Webb did not request the opportunity to present "rebuttal evidence" at the hearing, nor did he request a continuance of the hearing to provide him an opportunity to timely file affidavits or other evidence in response to Appellees' reply brief. In fact, Webb's brief does not cite to any part of the record where he made either request, or where the trial court denied his request. Webb waived the error by failing to make either or both of these requests and by failing to obtain a ruling. Tex. R. App. P. 33.1(a)(1)(A).[22]

Second, any evidence Webb complains the trial court should have allowed him to file was evidence that Webb could have filed in his response to the Motion.

---

[21] Webb relies on Tex. R. Civ. P. 87 to support his argument, yet acknowledges that Rule 87 cannot support his argument because "the parties are not dealing in this case with a move from one Texas county to another, rather the parties are litigating a forum-selection clause that will facilitate a move from one state to another." Ant.'s Br. at 27.

[22] Webb's argument ignores his own motion for reconsideration, which attached the very evidence he claims was not considered. If the trial court did not give Webb "an equal opportunity to respond," then the affidavits attached to his motion for reconsideration were never part of the record below and never considered by the trial court. This is another example of Webb taking inherently inconsistent positions in this case.

2570666.5

Webb had pleaded—and still pleads—that he is a seller under the UPA, and he attached to his Original Petition a copy of the UPA containing what purports to be his signature. Webb also sought benefit of the bargain damages in his live pleading – the alleged failure to pay Webb the purchase price for his membership interest. Based in part on these facts, Appellees' Motion contained an explicit statement that Webb had signed the UPA, and thus was bound by Section 10.10(b). C.R. 211 ("As Webb alleges, and as reflected in the UPA – a written agreement to which Webb is a signing party . . ."). And it was Webb—in his response to the Motion—that first raised the contention that he did not sign the UPA. Therefore, Webb knew, or at the very least should have known, that in the face of his pleadings and exhibits his response to Motion needed to attach evidence supporting his contention that he did not sign the UPA. Instead, Webb's response contained the bare contention—unsupported by any explanation at all or by any evidence — that he did not sign the UPA.[23]

Lastly, at the hearing on Appellees' Motion, in Webb's motion for reconsideration, at the hearing on that motion, and now in his brief, Webb has presented no explanation as to why he could not have obtained and filed in his response to the Motion the evidence he now complains he was prevented from

---

[23] Webb did not object at the trial court that the affidavits attached to Appellees' reply brief were untimely, and therefore waived any argument about the timeliness of the reply brief and affidavits. Tex. R. App. 33.1(a)(1)(A). To the extent Webb complains about a lack of opportunity to respond to that evidence because it was filed the day of the hearing, Webb created the timing problem by filing his response the day before the hearing.

presenting to the trial court. Rather, Webb's counsel admitted at the hearing on Appellees' Motion that he "didn't think it was necessary." R.R. Vol. 3, 28:15-16. The trial court did not abuse its discretion in granting Appellees' Motion and dismissing the case.

## III. The Trial Court Did Not "Transfer" Webb's Lawsuit to New Jersey

Webb's final complaint is that the trial court "abused its discretion" by **dismissing** Webb's lawsuit without prejudice because the trial court "does not have the express statutory authority to **transfer** a case to another state's jurisdiction." Ant.'s Br. at 28 (emphasis added). This argument is completely misplaced. The trial court did not transfer the lawsuit. It dismissed it. Dismissal is the proper procedural remedy when a court finds a valid and enforceable forum-selection clause that requires a lawsuit to be brought in another state. *Stokes Interest, G.P. v. Santo-Pietro*, 343 S.W.3d 441, 444 (Tex. App.—El Paso 2010, no pet.); *Accelerated Christian Educ., Inc. v. Oracle Corp.*, 925 S.W.2d 66, 70 (Tex. App.—Dallas 1996, no writ). Webb agrees this is a correct statement of Texas law. Ant.'s Br. at 29.

If the UPA's provision is a venue-selection clause, Appellees agree that there is nothing in the Texas Rules of Civil Procedure or the Texas Civil Practice and Remedies Code that expressly permits a Texas court to transfer a case to another state. But, again, that is not what the trial court did here. Rather, the trial

2570666.5

court dismissed Webb's lawsuit. Supp. C.R. 4-5. The case was not transferred to a particular court. The trial court's order did not prejudice Webb's right to re-file his lawsuit in state or federal court in Essex County. It is up to Webb, if he chooses to proceed with his lawsuit, to file in the appropriate court in Essex County.

The trial court's procedural remedy – dismissal without prejudice – properly invokes the Legislature's intent under TEX. CIV. PRAC. & REM. CODE §§ 15.020(c)(1) and (c)(2). The Legislature repeatedly used the phrase "in another jurisdiction" in the statute. The Legislature clearly contemplated motions challenging the plaintiff's choice of venue where the plaintiff's claims arise from a "major transaction" containing a clause requiring suit to be filed outside of Texas – like the UPA. Had the Legislature intended for Section 15.020 to apply only to "major transactions" involving venue-selection clauses that choose a Texas county as the place of venue, it would have excluded the phrase from the statute.

Moreover, dismissal comports with the parties' agreement and intent under the UPA – that no action shall be brought in any county other than Essex County. To accept Webb's argument, and remand the case to Dallas County because the trial court lacked authority to invoke that procedural remedy, would nullify the parties' agreement.

Finally, Webb cannot complain about the trial court's dismissal remedy because he invited it. At the September 23 hearing, the trial court verbally

-32-

indicated it was going to grant the Motion and asked whether the Court should transfer Webb's lawsuit to New Jersey or dismiss the lawsuit without prejudice to Webb's right to refile in New Jersey. R.R. Vol. 3, 29:8-14. Webb's counsel immediately responded, "Yeah, Your Honor. I don't think that the statute does provide a provision for you to transfer it. I think I would ask that if you're going to dismiss it, dismiss it without prejudice to allow me --." R.R. Vol. 3, 29:15-18. Webb has no right to complain because the trial court did exactly what his counsel requested.

## PRAYER

WHEREFORE, PREMISES CONSIDERED, Appellees pray that this Court affirm the trial court's order dismissing Webb's lawsuit without prejudice, and for all further relief the Court deems necessary.[24]

---

[24] Shuk and IDT alternatively pray that in the event the Court reverses and remands such order be without waiver of their special appearances.

2570666.5

Respectfully submitted,

GRAY REED & McGRAW


By:   /s/ Andrew K. York
      ANDREW K. YORK
      State Bar No. 24051554
      JIM MOSELEY
      State Bar No. 14569100

1601 Elm Street, Suite 4600
Dallas, Texas 75201
(214) 954-4135
(214) 953-1332 (Fax)

ATTORNEYS FOR APPELLEES LUCIEN
TUJAGUE, JR., AND DOMINION GAS
HOLDINGS, LP

HALLETT & PERRIN, PC


By:   /s/ Bryan P. Stevens (with permission)
      BRYAN P. STEVENS
      State Bar No. 24051387
      BARRETT C. LESHER
      State Bar No. 24070137

1445 Ross Avenue, Suite 2400
Dallas, Texas 75202
(214) 983-0053
(214) 922-4142 (Fax)

ATTORNEYS FOR APPELLEES
SHUK HOLDINGS, LLC,
IDT ENERGY, INC., and
DIVERSEGY LLC


-34-

2570666.5

GRUBER HURST ELROD
JOHANSEN HAIL SHANK LLP


By:   /s/ Mark L. Johansen (with permission)
      MARK L. JOHANSEN
      State Bar No. 10670240
      RAFAEL C. RODRIGUEZ
      State Bar No. 24081123

1445 Ross Avenue, Suite 2500
Dallas, Texas 75202
(214) 855-6800
(214) 855-6808 (Fax)

ATTORNEYS FOR APPELLEE
ALEX RODRIGUEZ

2570666.5

## CERTIFICATE OF COMPLIANCE

In accordance with Tex. R. App. P. 9.4(i)(3), I hereby certify that Appellants' response brief contains 8,258 words based upon the word count provided by Microsoft Word that was used to prepare the document.


/s/ Andrew K. York
ANDREW K. YORK

2570666.5

## CERTIFICATE OF SERVICE

Pursuant to Tex. R. App. P. 9.5(b)(1), I hereby certify that on April 14, 2015, a true and correct copy of Appellants' brief was forwarded to the persons listed below electronically through the electronic filing manager if the email address of the person is on file with the electronic filing manager, or by email if the email address is not on file.

Melvin Houston
Melvin Houston & Associates
1776 Yorktown St., Suite 350
Houston, Texas 77056
mhouston@gotellmel.com

Darrell J. O'Neal
2129 Winchester Road
Memphis, Tennessee 38116
domemphislaw@aol.com

Bryan Stevens
Barrett Lesher
Hallett & Perrin, PC
1445 Ross Avenue, Suite 2400
Dallas, Texas 75202
bstevens@hallettperrin.com
blesher@hallettperrin.com

Mark L. Johansen
Rafael C. Rodriguez
Gruber Hurst Elrod
Johansen Hail Shank LLP
1445 Ross Avenue, Suite 2500
Dallas, Texas 75202
mjohansen@ghjhlaw.com
rrodriguez@ghjhlaw.com


/s/ Andrew K. York
ANDREW K. YORK

-37-